**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KEITH BAXTER, | ) | |
| | ) | |
| Plaintiff, on behalf of himself and | ) | |
| all others similarly situated, | ) | |
| | ) | JURY DEMANDED |
| | ) | |
| v. | ) | No. 07 C 6745 |
| | ) | |
| KAWASAKI MOTORS CORP., U.S.A., | ) | |
| and KAWASAKI HEAVY INDUSTRIES, LTD. | ) | Judge: William Hart |
| | ) | |
| Defendants. | ) | Magistrate: Arlander Keys |

## <u>PLAINTIFF'S RESPONSE TO DEFENDANT, KAWASAKI MOTORS CORP., U.S.A.'S MOTION TO DISMISS</u>

Attorneys for Plaintiff

Jorge Sanchez                          Aaron D. Radbil
Carol Nguyen                           Gregory H. Moss
Thomas Geoghegan                       Scott M. Cohen
DESPRES SCHWARTZ & GEOGHEGAN           KROHN & MOSS, LTD.
77 West Washington Street              120 West Madison Street
Suite 711                              10th Floor
Chicago, IL 60602                      Chicago, IL 60602
(312) 372-2511                         (312) 578-9428

## TABLE OF CONTENTS

STATEMENT OF FACTS ............................................................................................... 1

STANDARD OF REVIEW ............................................................................................. 2

ARGUMENT ................................................................................................................... 3

I.      PLAINTIFF PROPERLY ALLEGES VIOLATIONS OF THE ODOMETER ACT. ... 3

      A.     Plaintiff Properly Pleads a Violation of 49 U.S.C. §32703(1). ... 3

            1.    KMC Is Unable To Avail Itself Of The Safe Harbor Provision Included In Section 32703(1) Of The Odometer Act. ... 5

            2.    Violation Of Section 32703(1) Of The Odometer Act Is A Question Of Fact For The Jury To Decide And Improper In A Motion To Dismiss. ... 6

            3.    Plaintiff Sufficiently Pleads The Existence Of A "Device" Causing Registration Of Mileage Different Form Actual Mileage Driven. ... 6

      B.     Plaintiff Properly Pleads a Violation of 49 U.S.C. §32703(2). ... 6

      C.     Plaintiff Properly Pleads a Violation Of 49 U.S.C. §32703(5)(A)(1)(A),(B). ... 7

II.     LIABILITY UNDER THE ODOMETER ACT IS NOT LIMITED TO AN IMMEDIATE SELLER OF AN AUTOMOBILE, BUT RATHER EXTENDS TO ANY PARTY VIOLATING THE LAW. ... 9

III.    PLAINTIFF PROPERLY ALLEGES INTENT TO DEFRAUD.

      A.     Intent To Defraud Must Be Inferred From A Showing Of Gross Negligence Or A Reckless Disregard Of Facts Indicating The Vehicle's Odometer Is Incorrect. ... 12

            1.    Plaintiff Sufficiently Alleges Intent To Defraud Specific To Violations Of 49 U.S.C. § 32703(1),(2). ... 13

            2.    Plaintiff Sufficiently Alleges Intent To Defraud Specific To Violations Of 49 U.S.C. §32703(5)(A)(1)(A),(B). ... 15

**STATEMENT OF FACTS**

On or about November 9, 2006, Plaintiff purchased a 2006 Kawasaki Vulcan Nomad 1600 ("Vulcan") manufactured, designed, and marketed by Defendants, Kawasaki Heavy Industries, Ltd., ("KHI") and distributed, sold and warranted by Kawasaki Motors Corporation, U.S.A. ("KMC"). (Plaintiff's Amended Class Action Complaint at ¶ 19, attached as Exhibit A). The purchase price of the Vulcan totaled more than $10,600.00. (Ex. A at ¶ 20).  In consideration for the purchase of the Vulcan, KMC issued and supplied to Plaintiff its two (2) year written warranty. (Ex. A ¶ 22).  KMC purposefully advertised for sale, sold, used, installed, had installed, and/or designed or altered, or directed the design or alteration of, the odometer of the Vulcan, to inflate the mileage registered by the odometer, above the actual mileage traveled by the Vulcan, by a factor of or approximately ten (10) percent. (Ex. A ¶ 23, 56).  Shortly after taking possession of the Vulcan, Plaintiff became aware that the mileage registered by the odometer of his vehicle was inflated by a factor of approximately ten (10) percent.  (Ex. A ¶ 24). Plaintiff verified inflated odometer readings via two global positioning satellite devices, in addition to United States interstate mile markers. (Ex. A ¶ 24).

Upon transfer of ownership, legal interest, and/or beneficial interest, KMC failed to disclose the cumulative mileage registered on the odometer of Plaintiff's vehicle, and failed to disclose that the actual mileage of the vehicle was unknown where KMC knew that the odometer reading was different from the number of miles the vehicle had actually traveled. (Ex. A ¶¶ 28, 29).  KMC, with regard to joint, cooperative, collaborative, and/or independent, unconnected, and unrelated transfer, failed to state that the actual mileage specific to Plaintiff's vehicle was unknown. (Ex. A ¶ 29).  KMC adopted the acts and capacity of all subsequent transferors by causing subsequent transferors to give, make, and provide false odometer statements. (Ex. A ¶ 30).  On December 26, 2006, Plaintiff contacted KMC informing KMC of the defective

1

odometer. (Ex. A ¶ 25). In response to Plaintiff's December 26, 2006 notice, KMC acknowledged the odometer defect is common with the Vulcan, as well as motor vehicles similar to the Vulcan. (Ex. A ¶ 25). KMC also indicated that a ten percent error rate, specific to discrepant odometer mileage readings, is within Defendants' acceptable tolerance. (Ex. A ¶ 25). In addition, KMC admits that it has no desire to, and in fact refuses, to repair and/or remedy the defective odometer installed in Plaintiff's vehicle. (Ex. A ¶ 25).

On January 4, 2007, Plaintiff tendered his vehicle to one of Defendants' authorized repair centers reporting the mileage registered by the odometer of his vehicle was inflated by a factor of approximately ten (10) percent. (Ex. A ¶ 26). On February 1, 2007, KMC mailed to Plaintiff written correspondence referencing the defective condition of the odometer installed on Plaintiff's vehicle. KMC in fact stated: "Kawasaki Motors Corp., U.S.A., along with other manufacturers, distributes product with speedometers that will register higher speed than actual speed." (Ex. A ¶ 27). KMC additionally recognized "common inaccuracies" specific to odometers utilized by Defendants' motor vehicles. (Ex. A ¶ 31).

## STANDARD OF REVIEW

A complaint is to be liberally construed, and is viewed in the light most favorable to the plaintiff. *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91 (1979). Well-pled allegations of fact and every inference fairly deducible therefrom, are accepted as true for purposes of a motion to dismiss. *Zinermon v. Burch*, 494 U.S. 113 (1990). Federal rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 127 S. Ct. 2197 (2007). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007).

## ARGUMENT

## I.     PLAINTIFF PROPERLY ALLEGES VIOLATIONS OF THE ODOMETER ACT.

The purpose of the Odometer Act is to insure good faith dealing in the automobile

industry, to establish safeguards for the protection of the public, and to punish odometer

tamperers. *Duval v. Midwest Auto City, Inc.*, 578 F. 2d 721 (8th Cir. 1978). "The purpose of the

statute is to punish odometer tamperers by imposing civil penalties upon them and to reward

purchasers who discover such tampering and bring it to the attention of the federal courts." *Stier*

*v. Park Pontiac, Inc.*, 391 F. Supp. 397 (S.D. W.Va. 1975). The Odometer Act is remedial in

nature and should be broadly construed to effectuate its purposes, which go beyond prohibiting

straightforward odometer tampering to establish a comprehensive regulatory system that seeks to

deter sophisticated fraud in the interstate market. *Ryan v. Edwards*, 592 F.2d 756 (4th Cir.

1979); *Owens v. Samkle Automotive Inc.*, 425 F. 3d 1318 (11th Cir. 2005). Congress realized that

consumers rely heavily on the odometer reading as an index of the condition and value of a

vehicle, and that purchasers are entitled to rely on the odometer reading as an accurate reflection

of the mileage actually traveled by the vehicle; and that an accurate indication of the mileage

traveled by a motor vehicle assists the purchaser in determining its safety and reliability. 49

U.S.C. § 32701. "It is therefore the purpose of this subchapter to prohibit tampering with

odometers on motor vehicles and to establish certain safeguards for the protection of purchasers

with respect to the sale of motor vehicles having altered or reset odometers." *Id*.

### A.     Plaintiff Properly Pleads KMC Violated 49 U.S.C. §32703(1).

Section 32703(1) of the Odometer Act provides that a person may not:

> [A]dvertise for sale, sell, use, install, or have installed, a device that makes
> an odometer of a motor vehicle register a mileage different from the
> mileage the vehicle was driven, as registered by the odometer within the
> designed tolerance of the manufacturer of the odometer. 49 U.S.C. §
> 32703(1).

3

All the following facts from the Amended Complaint must be taken as true and show that plaintiff has more than sufficiently plead that KMC violated 49 U.S.C. § 32703(1). *Zinermon*, 494 U.S. 113. KMC "engaged in, with the intent to defraud, acts which constitute advertising for the sale, sale, use, installing, or having installed, a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer." (Ex. A ¶ 4). KMC also "engaged in, with the intent to defraud, acts which constitute disconnecting, resetting, altering, or having disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer. (Ex. A ¶ 5). KMC "caused, through components, devices, software tables, and electronic mechanisms, the inflation of the reported mileage of the vehicle purchased by Plaintiff, over mileage actually traveled by the vehicle." (Ex. A ¶ 9). KMC "purposefully designed or altered the odometer of Plaintiff's vehicle, or directed the design or alteration of the odometer of Plaintiff's vehicle, to inflate the mileage registered by the odometer, above the actual mileage traveled by Plaintiff's vehicle, by a factor of or approximately ten (10) percent." (Ex. A ¶ 23).

Upon becoming aware that the mileage registered by the odometer of his vehicle was inflated Plaintiff verified inflated odometer readings via two global positioning satellite devises, in addition to United States mile markers. (Ex. A ¶ 24). KMC admitted the odometer defect is common with Plaintiff's vehicle, as well as the general type of vehicle Plaintiff purchased. (Ex. A ¶ 25). KMC admitted that "Kawasaki General Motors Corp., U.S.A., along with other manufacturers, distributes products with speedometers that will register higher speed than actual speed," and KMC recognizes "common inaccuracies" regarding odometers utilized by KMC's motor vehicles. (Ex. A ¶ 27, 31).

4

      **1.**      **KMC Is Unable To Avail Itself Of The Safe Harbor Provision Included In Section 32703(1) Of The Odometer Act.**

"Tolerance," as referenced by Section 32703(1) of the Odometer Act, connotes variation both above and below the actual mileage driven.  In particular, "tolerance" refers to "errors of underregistration" and "errors of overregistration."  (See United States Department of Commerce, Technology Administration, National Institute of Standards & Technology Handbook, attached as Exhibit B).  KMC "purposefully designed or altered the odometer of Plaintiff's vehicle, or directed the design or alteration of the odometer of Plaintiff's vehicle, to inflate the mileage registered by the odometer, above the actual mileage traveled by Plaintiff's vehicle, by a factor of or approximately ten (10) percent."  (Ex. A ¶ 23).  Importantly, KMC concedes over-registration by a factor of ten (10) percent. (Ex. A ¶ 25).  KMC admits that it limits its "acceptable tolerance" to a ten (10) percent error rate,  and those admissions demonstrate a violation of the Odometer Act.  Simply, an "acceptable tolerance" of ten (10) percent makes allowance for over-registration up to five (5) percent and under-registration up to five (5) percent.  KMC's admission that the odometer of Plaintiff's vehicle over-registers mileage above the actual mileage traveled by a factor of or approximately ten (10) percent places the instant circumstance well outside KMC's "designed tolerance."

Indeed the United States Department of Commerce ("DOC") has indicated that accepted tolerances on odometers for passenger vehicles shall not exceed four (4) percent. (Ex. B).  KMC's stated "tolerance," on its face, is invalid.  For reason that KMC openly fails to properly factor under-registration into its acknowledged "acceptable tolerance," and for reason that Defendant's "acceptable tolerance" demonstrably exceeds that prescribed by the DOC, Defendant is certainly not entitled to any safe harbor provision included in the Act.

2.    **Violation Of Section 32703(1) Of The Odometer Act Is A Question Of Fact For The Jury To Decide and Improper In A Motion to Dismiss.**

Issues regarding "designed tolerance" are evidentiary, and not appropriate for disposition at the pleading stage. Plainly, there exists no evidence before this Court specific to "tolerance," acceptable or proper. Plaintiff has properly alleged violation of Section 32703(1) of the Odometer Act. *Discussed supra*. Whether in fact a defect in an odometer rises to the level of an actionable violation under the Odometer Act is an issue to be resolved by the jury.

3.    **Plaintiff Sufficiently Pleads The Existence Of A "Device" Causing Registration Of Mileage Different Form Actual Mileage Driven.**

Section 32703(1) of the Odometer Act provides that a defendant may not advertise for sale, sell, use, install, or have installed, a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven. 49 U.S.C. § 32703(1). KMC "caused, through components, devices, software tables, and electronic mechanisms, the inflation of the reported mileage of the vehicle purchased by Plaintiff, as well as all those included in the subject class, over mileage actually traveled by the vehicle." (Ex. A ¶ 9). KMC "has engaged in, with the intent to defraud, acts which constitute advertising for the sale, sale, use, installing, or having installed, a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer." (Ex. A ¶ 6). Moreover, Plaintiff need not detail facts or legal theories, but rather "give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).

B.    **Plaintiff Properly Pleads KMC Violated 49 U.S.C. §32703(2).**

Section 32703(2) of the Odometer Act provides that a person may not:

> Disconnect, reset, alter, or have disconnected, reset, or altered, an
> odometer of a motor vehicle intending to change the mileage registered by
> the odometer.  49 U.S.C. § 32703(1).

KMC "engaged in, with the intent to defraud, acts which constitute disconnecting, resetting, altering, or having disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer."(Ex. A. ¶ 5). Defendant is also engaged in the "practice and procedure in designing or altering, or directing the design or alteration, of motor vehicle odometers that register inflated mileage readings." (Ex. A¶ 5). Defendant intended to defraud consumers "in disconnecting, resetting, altering, or having disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer."  (Ex. A ¶ 61).

**C.     Plaintiff Properly Pleads KMC Violated 49 U.S.C. §32703(5)(A)(1)(A),(B).**

Section 32705(a)(1)(A),(B) requires that a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure:

> Disclosure of the cumulative mileage registered on the odometer.
>
> Disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled. 49 U.S.C. § 32705(a)(1)(A),(B).

The Odometer Act continues: "A person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the disclosure required by such a regulation."  49 U.S.C. § 32705(a)(2).  Both the language and history of the disclosure provisions included in the Act demonstrate the purpose of such provisions are "to enable the purchaser of a motor vehicle to know how many miles the vehicle has traveled, as a guide to its safety, reliability and value." *Ryan*, 592 F.2d at 760.  The requirement imposed is simple, "[e]very person purchasing a car must be given a written statement of the vehicle's mileage if it is known." *Id*.

The disclosure provisions of the Odometer Act apply not only to odometer mileage statements, but also general representations regarding the mileage of a vehicle. *Id*.  Statements

included in newspaper advertisements, as well as oral claims, are actionable under the disclosure requirements of the Act. *Id.* A transferor cannot insulate himself from liability under the Odometer Act where false mileage statements, no matter the type, are made. *Id.*

"Transfer," as defined by the Odometer Act, means "to change ownership by sale, gift, or any other means." 49 U.S.C.A. § 32702(8). A "transferor" is defined as any person who transfers his ownership in a motor vehicle by sale, gift, or any means other than by creation of a security interest. *Riverside Lincoln Mercury Sales, Inc. v. Auto Dealers Exchange Co.*, 1987 WL 7280 (N.D. Ill. 1987), citing 49 C.F.R. § 580.3. Ultimate purchasers of automobiles are "transferees" for the purposes of the disclosure requirements of the Act. *U.S. v. Waldrop*, 786 F. Supp. 1194 (M.D. Pa. 1991), aff'd without reported opinion, 983 F.2d 1054 (3d Cir. 1992).

Upon transfer of ownership, legal and/or beneficial interest, KMC failed to disclose the cumulative mileage registered on the odometer of Plaintiff's vehicle, and failed to disclose that the actual mileage of the vehicle was unknown where KMC knew that the odometer reading was different from the number of miles the vehicle had actually traveled. (Ex. A. ¶ 28-29). KMC, with regard to joint, cooperative, collaborative, and/or independent, unconnected, and unrelated transfer, failed to state that the actual mileage specific to Plaintiff's vehicle was unknown. (Ex. A. ¶ 29). KMC adopted the acts and capacity of all subsequent transferors by causing subsequent transferors to give, make, and/or provide false odometer statements. (Ex A ¶ 30).

KMC's admits that "Kawasaki General Motors Corp., U.S.A., along with other manufacturers, distributes products with speedometers that will register higher speed than actual speed." KMC also recognizes "common inaccuracies" specific to odometers utilized by KMC's motor vehicles. (Ex. A. ¶ 27, 31). KMC affirmed in writing that "the acceptable tolerance for Kawasaki is an error rate of up to 10 percent." (Ex. A. ¶ 27).

The disclosure requirements of the Odometer Act require that a transferor has a duty to disclose the fact that a vehicle's mileage is unknown. *Kantorczyk v. New Stanton Auto Auction, Inc.*, 433 F. Supp. 889 (W.D. Pa. 1977); *Suits v. Little Motor Co.*, 642 F. 2d 883 (5th Cir. 1981). Simply, where Defendant concedes that it distributes products whose odometers will register mileage other than that actually traveled, deemed by Defendant as "common inaccuracies," Section 32705(a)(1)(B) of the Odometer Act necessitates that Defendant disclose that the actual mileage is unknown. KMC did not do so, and therefore violated disclosure requirements of the Odometer Act. Additionally, KMC is liable for violation of the Odometer Act where KMC's actions or inactions caused a subsequent transferor to provide a false odometer statement. *See United States v. Henson*, 848 F 2d 1374 (6th Cir. 1988), *cert denied*, 488 U.S. 1005 (1989).

## II.  LIABILITY UNDER THE ODOMETER ACT IS NOT LIMITED TO AN IMMEDIATE SELLER OF AN AUTOMOBILE, BUT RATHER EXTENDS TO ANY PARTY VIOLATING THE LAW.

The principal purpose of the Odometer Act is to impose a certain forced honesty in the sale of motor vehicles. *Mataya v. Behm Motors, Inc*. 409 F. Supp. 65 (E.D. Wis. 1976). Actions for damages under the Act are in no way limited by archaic notions of privity. *Id.* at 68; *Riverside Lincoln Mercury Sales, Inc. v. Auto Dealers Exchange Co.*, 1987 WL 7280 (N.D. Ill. 1987). "To the contrary, liability extends to each and every malefactor in the chain of title." *Id*. Liability under the Act extends to any party violating the law. *Stier v. Park Pontiac, Inc.*, 391 F. Supp. 397 (S.D. W.Va. 1975); *see also Alley v. Chrysler Credit Corp.,* 767 F. 2d 138 (5th Cir.1985) (holding the Act does not limit liability to an immediate seller, but extends liability to any person violating the law); and *see Mataya***,** 409 F. Supp. at 68 (same). Transferors of a vehicle cannot avoid liability due to an absence of privity, because the consumer is entitled to recover damages under the Act from each transferor in the chain of title who has violated the Act. *Ralbovsky v. Lamphere*, 731 F. Supp. 79 (N.D. N.Y. 1990).

Rather, the language of the Odometer Act evinces intent to expansively prescribe the class of persons protected under the Act, and correspondingly, the class of persons who may bring suit thereunder. The purchaser of a vehicle, subject to violations of the Act, has standing to bring an action against all prior owners in the chain of title, even where there is no allegation that the prior owners made a false statement directly to the purchaser. *Carrasco v. Fiore Enterprises*, 985 F. Supp. 931 (D. Ariz. 1997). If a defrauded ultimate purchaser could sue only a violator of the Act who directly transferred the vehicle to him, each owner in the chain of title who discovered the violation and then perpetuated the fraud by subsequently transferring the vehicle without disclosing the violation would be insulated from liability merely because the vehicle was transferred on more than one occasion. *Id*. at 938. Such a result would be anomalous in light of the purpose of the Odometer Act, which is to reward the purchaser who reports a violation and to punish any party who transfers a vehicle with the intent to defraud. *Id*. at 939.

## III.     PLAINTIFF PROPERLY ALLEGES INTENT TO DEFRAUD.

Federal Rule of Civil Procedure 9(b) states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(B).

The particularity requirement of Rule 9 imposes a heightened pleading burden on plaintiffs who assert fraud claims. *Id*. The "circumstances" of the fraud must be particularized. *Id*. The second sentence of Rule 9, however, relaxes the burden with respect to the pleading of scienter, permitting it to be pled "generally," rather than with particularity. *Id*. The term "generally" is undefined by Rule 9. *See Id*. Simply, used to relax the heightened standard of particularity, the term "generally" merely returns the pleading standard for scienter to a pre-heightened, constantly applicable Rule 8 minimum, or showing of existence of a real claim through a short and plain statement. *See* Fed. R. Civ P. 8.

In order to properly allege motive and opportunity to commit fraud or reckless or conscious behavior of fraud, plaintiffs need not particularize facts which demonstrate the defendant's state of mind. *In Re Time Warner Inc. Securities Litigation*, 9. F. 3d 259 (9th Cir. 1993). "Rule 9(b) compels a complaint that asserts fraud to identify the person making the representation and the time, place and content of the misrepresentation, as well as the method by which the misrepresentation was communicated to the plaintiff." *Whirlpool Financial Corp. v. GN Holdings, Inc.*, 873 F. Supp 111 (N.D. Ill. 1995), citing *Katz*, 36 F. 3d at 675. Rule 9(b) does not require "particularity" with respect to the defendant's state of mind. *DiLeo v. Ernst & Young*, 901 F. 2d 624 (7th Cir.1990).

Rule 9 was not drafted to allow the pleader's lack of access to information to serve as grounds for dismissal. *See Theory of Pleading*, 47 Mich. L. Rev. 297 (1949).[1]  In a case where a pleader refuses to include requisite information, despite possessing such information, outright dismissal may be appropriate. However, it is often an impossible task that the pleader make his case before engaging in discovery. Rule 9(b) does not serve to allow a guilty defendant to hide behind self-proclaimed unsatisfactory pleadings to prevent the truth from emerging. Plaintiffs need not plead facts to which they lack access prior to discovery. *Katz v. Household Intern., Inc.*, 91 F. 3d 1036 (7th Cir. 1996); *see also In Re Time Warner Inc. Securities Litigation*, 9. F. 3d 259 (9th Cir. 1993) (denying a motion to dismiss because it was not clear at the threshold stage of the lawsuit that the defendant had nothing to gain from partaking in the alleged acts). Motive, in practice, depends not upon what a party believes, but rather what a party can prove.

---

[1] "The purpose of requiring that fraud be pled with particularity is not, as it might seem and the cases still sometimes say, (citation omitted) to give the defendant in such a case enough information to prepare his defense." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467 (7th Cir. 1999). A charge of fraud is no more opaque than any other charge, and defendant can get all the information he needs to meet it by filing a contention interrogatory. *Id.* at 469. The purpose of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing his complaint. *Id.* "By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported." *Id.*

11

A.      **Intent To Defraud Must Be Inferred From A Showing Of Gross Negligence Or A Reckless Disregard Of Facts Indicating The Vehicle's Odometer Is Incorrect.**

The Odometer Act reads in part:

> A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $1,500, whichever is greater.  49 U.S.C.A. § 32710(a).

Congress, incorporating the words "intent to defraud" in the Odometer Act, envisioned misconduct more invidious than mere negligence.  *Jones v. Hanley Dawson Cadillac Co*., 848 F. 2d 803 (7th Cir. 1988), citing *See Prosser and Keeton on Torts* § 107, at 740-42 (W. Keeton 5th ed. 1984).  Congress did not intend negligence to be the basis for civil liability.  *Jones*, 848 F. 2d at 807.  "In our view, the meaning of the phrase 'intent to defraud' is at least as clear as the meaning of the term 'manipulative. . . .'"  *Id*.  The question decided in *Jones*, whether failure to exercise reasonable care can constitute an intent to defraud, results in the simple finding that "mere negligence is insufficient to impose civil liability" under the Odometer Act.  *Id*. at 808.  However, a "transferor may not close his eyes to the truth.  If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risk of such an occurrence."  *Id*. at 808, citing *Nieto v. Pence,* 578 F. 2d 640 (5th Cir.1978).

Relying on *Niento*, the Fourth Circuit noted: "Constructive knowledge, recklessness, or even *gross negligence* in determining and disclosing the actual mileage traveled by a vehicle have been held sufficient to support a finding of intent to defraud under the statute."  *Jones*, 848 F. 2d at 807, citing *Ryan v. Edwards,* 592 F.2d 756 (4th Cir.1979) (emphasis in original).  The words "even gross negligence," strongly implying that intent to defraud is more than mere negligence, simply suggest that the failure to exercise reasonable care might not alone allow a fact finder to infer an intent to defraud.  Intent to defraud can be inferred "where the seller

12

exhibited gross negligence or a reckless disregard for the truth. . . ." *Tusa v. Omaha Auto Auction Inc.,* 712 F. 2d 1248 (8th Cir.1983); *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F. 3d 1275 (10th Cir. 1998).  "Intent may [be] implied on the basis of objective circumstances." Sen. Rep. No. 92-413, 92d Cong., 2d Sess. (1972).

> **1.    Plaintiff Sufficiently Alleges Intent To Defraud Specific To Violations Of 49 U.S.C. § 32703(1),(2).**

KMC purposefully advertised for the sale, sold, used, installed, had installed, and/or designed or altered, or directed the design or alteration of, the odometer of his vehicle, to inflate the mileage registered by the odometer, above the actual mileage traveled, by a factor of or approximately ten (10) percent, with intent to defraud. (Ex. A ¶ 23, 56-58, 60-62). KMC acknowledges that the odometer defect noted by Plaintiff is common with his vehicle, as well motor vehicles similar to his vehicle. (Ex. A ¶ 25).  KMC indicated that a ten percent error rate, specific to discrepant odometer mileage readings, is within KMC's acceptable tolerance.  (Ex. A ¶ 25).  Defendant in writing admitted, that "Kawasaki Motors Corp., U.S.A., along with other manufacturers, distributes product with speedometers that will register higher speed than actual speed," as well as KMC's concession that it recognizes "common inaccuracies" specific to odometers utilized by Defendant's motor vehicles.  (Ex. A ¶ 27, 31).  KMC had actual notice of the existence of the defective odometer and consciously elected not to notify Plaintiff or voluntarily recall Plaintiff's vehicle.  (Ex. A ¶ 58, 62).

Indeed, Plaintiff alleges the "who, what, where, and when."  *See DiLeo v. Ernst & Young,* 901 F. 2d 624 (7th Cir.1990).  Focusing upon the "circumstances," courts have insisted that allegations contain the time and place of the representations, the identity of the source and victim, and what was gained or lost in the transaction.  *Particularity-Averment of Fraud,* 27 A.L.R. FED. 407 (1976).  Rule 9(b), however, does not abrogate the general mandate of Rule

8(a)(2) that the complaint set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief."

The Odometer Act's prohibition specific to tampering with an odometer with the intent to defraud is analogous to the offense of an assault with a deadly weapon. *Delay v. Hearn Ford*, 373 F. Supp. 791 (D.C. S.C. 1974). KMC's conduct in having advertised for the sale, sold, used, installed, had installed, and/or designed or altered, or directed the design or alteration of, the odometer of his vehicle, to inflate the mileage registered by the odometer, above the actual mileage traveled, by a factor of or approximately ten (10) percent, is akin to loading the weapon to make it "deadly." *Id*. Intent, therefore, first presents itself through initial act. Additionally, the weapon, like the car with the tampered odometer, may lay around unused for some time. "When the weapon is used to assault someone, like the sale of the car with the tampered odometer to a purchaser with a failure to disclose the tampering," the conduct is again actionable, and intent yet again found. *Id*.

Moreover, intent to defraud may be inferred from a party's involvement in a scheme to defraud, with the knowledge that many transferred cars have incorrect odometer readings. *Attorney General of Maryland v. Dickson*, 717 F. Supp. 1090 (D. Md. 1989). Defendant's practice of tampering with motor vehicle odometers is a "scheme to tamper with motor vehicle odometers" contravening congressional safeguards enacted to protect motor vehicle purchasers from odometer alteration. (Ex. A ¶ 1). "Just as the unscrupulous mechanic who rolls back a single odometer with a screwdriver is subject to liability under the Odometer Act, so is a sophisticated manufacturer of thousands, if not hundreds of thousands of motor vehicles equipped with altered components, devices, software tables, and electronic mechanisms, specific to odometers produced in mass." (Ex. A ¶ 3).

**2.    Plaintiff Sufficiently Alleges Intent To Defraud Specific To Violations Of 49 U.S.C. §32703(5)(A)(1)(A),(B).**

KMC failed to disclose the cumulative mileage registered on the odometer of the his vehicle, and failed to disclose that the actual mileage is unknown, where KMC knew that the odometer reading is different from the number of miles the vehicle has actually traveled.  (Ex. A ¶ 64).  KMC's conduct was committed with the intent to defraud. (Ex. A ¶ 65). KMC had actual notice of the existence of the defective odometer and consciously elected not to notify Plaintiff or voluntarily recall Plaintiff's vehicle.  (Ex. A ¶ 66).  KMC "acknowledged the odometer defect is common with Plaintiff's vehicle, as well as the general type of vehicle Plaintiff purchased," and that KMC "stated that a ten percent error rate, specific to discrepant odometer mileage readings, is within Defendants' acceptable tolerance."  (Ex. A ¶ 25). KMC's declared "that it has no desire to, and in fact refuses, to repair and/or remedy the defective odometer installed in Plaintiff's vehicle."  (Ex. A ¶ 25).  The failure to disclose to Plaintiff that the odometer reading was known by KMC to be different from the number of miles that the vehicle had actually traveled is evidence of intent to defraud.  *See Delay v. Hearn Ford* 373 F. Supp. 791 D.C. S.C. 1974.  Where Defendant was aware that the odometer was inaccurate, yet failed to disclose the same to Plaintiff, the "intent to defraud" element is satisfied.  *See Diersen v. Chicago Car Exchange*, 110 F. 3d 481 (7th Cir. 1997).  What's more, fraudulent or evil intent is substantiated where KMC in fact refused to remedy the defective odometer installed in Plaintiff's vehicle upon request, following KMC's admission that the odometer inflated the mileage registered by the odometer above the actual mileage registered by the odometer.  *Id*. at 488.

WHEREFORE, Plaintiff, KEITH BAXTER, respectfully requests that this Court deny Defendant, KAWASAKI MOTORS CORP., U.S.A.'s,  Motion to Dismiss.

Respectfully submitted
By:  s/Aaron D. Radbil_____
One of the Attorneys for Plaintiff