

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEITH BAXTER, on behalf of )
himself and all others )
similarly situated, )
                                )
        Plaintiff, )
                                )
  v.                           )   No. 07 C 6745
                                )
KAWASAKI MOTORS CORP., U.S.A., )
KAWASAKI HEAVY INDUSTRIES, LTD., )
                                )
        Defendants. )

## OPINION AND ORDER

Does the Odometer Act apply to what arguably is a manufacturer's design defect? Keith Baxter alleges that he purchased a Kawasaki motorcycle on which the odometer registers approximately 10% higher than the mileage actually traveled. He contends defendants have violated the federal Odometer Act, 49 U.S.C. §§ 32701-11. Named as defendants in the Amended Complaint are Kawasaki Motors Corp., U.S.A. ("KMC") and Kawasaki Heavy Industries, Ltd. ("KHI"). Both are alleged to have manufactured, designed, and marketed the motorcycle that plaintiff purchased. Am. Compl. ¶ 19.[1] It is alleged that

---

[1] In allegations describing the parties, KHI is alleged to be "engaged in the manufacture, sale, advertisement, and/or distribution of motor vehicles," Am. Compl. ¶ 15, while KMC is alleged to be "engaged in the sale, advertisement, and/or

plaintiff purchased the motorcycle from State Motorcycles, one of defendants' authorized dealerships. A motion to dismiss the Amended Complaint is pending.[2] It is contended that plaintiff has not pleaded his claims with the particularity required by Fed. R. Civ. P. 9(b). It is also contended that the allegations do not support that defendants violated the Odometer Act because there is no alleged failure to report the mileage on the odometer when the motorcycle was transferred to plaintiff nor any allegation that there was any tampering in the form of rolling back the mileage. Additionally, it is contended that defendants cannot be liable because they did not transfer the motorcycle to plaintiff.

Plaintiff specifically identifies the motorcycle that he purchased and the date of the purchase. In alleging that he received a "Kawasaki Assembly and Preparation Check List" that

---

distribution of motor vehicles," id. ¶ 16. For purposes of ruling on the pending motion to dismiss, the specific allegation in ¶ 19 that KMC manufactured plaintiff's motorcycle will be taken as true. (KMC denies that it is a manufacturer, but acknowledges that the allegations of a complaint must be assumed to be true when ruling on a motion to dismiss.)

[2]The original Complaint named only KMC as a defendant. After KMC moved to dismiss the Complaint, but before plaintiff answered the motion to dismiss, plaintiff filed an Amended Complaint adding KHI as a defendant. KMC decided to stand on its original motion to dismiss regarding the Amended Complaint. Both the answer to the motion to dismiss and KMC's reply directly address the Amended Complaint. There is no indication that KHI has yet been served with process. Since the arguments raised by KMC apply equally to KHI, the motion to dismiss will be treated as applying to both defendants.

refers to the "first retail purchaser," plaintiff implicitly alleges that he purchased the motorcycle new, not as a used vehicle. See Am. Compl. ¶ 21. He alleges the Check List was completed by the authorized dealership and checked off that the instruments on the motorcycle were working properly based on Kawasaki's standards. Plaintiff specifically alleges that he received a warranty from KMC warranting that the motorcycle was free from any defect in material and workmanship.

It is alleged that: "Defendants purposefully designed or altered the odometer of Plaintiff's vehicle, or directed the design or alteration of the odometer of Plaintiff's vehicle, to inflate the mileage registered by the odometer above the actual mileage traveled by Plaintiff's vehicle, by a factor of or approximately ten (10) percent." Id. ¶ 23. It is also alleged: "Defendants have caused, through components, devices, software tables, and electronic mechanisms, the inflation of the reported mileage of" plaintiff's vehicle and those of the putative class members. Id. ¶ 9. Plaintiff alleges that he discovered this discrepancy shortly after he purchased the vehicle and contacted KMC beginning December 26, 2006.

Plaintiff allegedly received a December 28, 2006 response from KMC in which KMC acknowledged that the condition is common, but that a 10 percent error rate is within KMC's accuracy tolerance for odometers. KMC refused to alter the

discrepancy. See id. ¶¶ 25, 27. In response to further correspondence, KMC sent a February 1, 2007 letter reiterating that a 10 percent overstatement is acceptable. In a February 13, 2007 letter to plaintiff, KMC stated "no speedometer will be or is expected to be 100% accurate." It also acknowledged "common inaccuracies" in odometers. KMC continued to refuse to alter the odometer.

Plaintiff also alleges representations contained in the Owner's Manual for his motorcycle. It is represented in the Owner's Manual that the odometer shows the total distance traveled.

Plaintiff includes allegations regarding an omission that defendants made at the time of transferring the motorcycle. Since it is alleged that plaintiff purchased the motorcycle from a dealership, it is implicit that the transfer by defendants was to the dealership or an intermediary, not directly to plaintiff.

> 28. Upon transfer of ownership, legal interest, and/or beneficial interest, Defendants failed to disclose the cumulative mileage registered on the odometer of Plaintiff's vehicle. Defendants failed to give respective transferee(s) written disclosure of the cumulative mileage registered on the odometer of the subject vehicle.
> 29. Upon transfer of ownership, legal interest, and/or beneficial interest, Defendants failed to disclose that the actual mileage of the vehicle was unknown where Defendants knew that the odometer reading was different from the number of miles the vehicle had actually traveled. Defendants, respectively, and with respect to joint, cooperative, and collaborative,

>   and/or independent, unconnected, and unrelated
>   transfer, failed to state that the actual mileage
>   specific to Plaintiff's vehicle was unknown.
>        30. Defendants adopted the acts and capacity
>   of all subsequent transferors by causing
>   subsequent transferors to give, make, and/or
>   provide false odometer statements.

Id. ¶¶ 28-30.

Plaintiff alleges that he has been damaged because a mileage overstatement on the odometer reduces the trade-in or resale value of the motorcycle. He does not contend it reduces his warranty for the motorcycle, which is expressly alleged to be a two-year warranty, not a warranty based on mileage.

The Amended Complaint is divided into three counts, with each count based on a violation of a different section of the Odometer Act. Count I alleges a violation of 49 U.S.C. § 32703(1). Count II is based on a violation of § 32703(2) and Count III is based on a violation of § 32705(a)(1).

The Odometer Act provides for a private right of action when a violation is committed with the intent to defraud. 49 U.S.C. § 32710; Ioffe v. Skokie Motor Sales, Inc., 414 F.3d 708, 710 (7th Cir. 2005). Based on the intent to defraud requirement, courts have held that Fed. R. Civ. P. 9(b) applies to pleading Odometer Act claims. See McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir. 1980);[3] Koorndyk v.

---

[3]Federal odometer laws have gone through various revisions since first enacted in 1972. However, there have been

Midway Motor Sales, Inc., 2005 WL 1802343 *1-2 (W.D. Mich. July 28, 2005); Edlund v. Ridgedale Auto., Inc., 2001 WL 877577 *3 (D. Minn. Aug. 1, 2001). To satisfy the requirements of Rule 9(b), a plaintiff ordinarily must "identi[f]y . . . the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992) (quoting Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir.1992)). The plaintiff must plead "the who, what, when, where, and how: the first paragraph of any newspaper story." Crichton v. Golden Rule Ins. Co., 2006 WL 2349961 *4 (S.D. Ill. Aug. 11, 2006) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)). The purpose of Rule 9(b) is "to ensure that the party accused of fraud . . . is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading," Lachmund v. ADM Investor Serv., Inc., 191 F.3d 777, 783 (7th Cir. 1999), and to compel a plaintiff to undertake adequate pre-filing investigation of claims of fraud, so that defendants are not injured by groundless charges of deceit. See Ackerman v.

---

few substantive changes so that case law applying prior versions of the statute generally are still applicable. See Harris v. Jamaica Auto Repair Inc., 2005 WL 1861730 *3 n.7 (E.D.N.Y. Aug. 1, 2005).

Northwestern Mut. Life Ins. Co., 172 F.3d 467, 469 (7th Cir. 1999). Fair notice is the most basic consideration. Vicom, Inc. v. Harbridge Merch. Serv., Inc., 20 F.3d 771, 777-78 (7th Cir. 1994); United States ex rel. Salmeron v. Enterprise Recovery Sys., Inc., 464 F. Supp. 2d 766, 768 (N.D. Ill. 2006). When a corporate defendant is involved, it is generally sufficient to identify the communication containing an alleged misrepresentation; it is not necessary to identify the particular person who authored the communication. See Gilmore v. Southwestern Bell Mobile Sys., L.L.C., 210 F.R.D. 212, 224 (N.D. Ill. 2001). Cf. Koorndyk, 2005 WL 1802343 at *5 (Rule 9(b) did not require that the plaintiff allege the specific person as one of the defendants who altered the odometer).

    Here, plaintiff has specifically alleged a number of communications that he received from defendants and an omission. He has identified when these communications occurred and the means through which they were communicated. He has also sufficiently specified the contents of the communications. Plaintiff has generally averred that defendants knew their odometers were inaccurate and that they acted with an intent to defraud regarding the inaccuracies. State of mind, including fraudulent intent, may be generally averred. Fed. R. Civ. P. 9(b); Vincent v. City Coll. of Chicago, 485 F.3d 919, 925 (7th

Cir. 2007); Tricontinental Indus., Ltd. v. Pricewaterhouse-Coopers, LLP, 475 F.3d 824, 833 (7th Cir. 2007).[4]

Plaintiff contends that his allegations support violations of three different sections of the Odometer Act. Each will be considered in turn to determine whether the allegations support a violation of the Odometer Act.

Section 32703(1) provides: **"A person may not advertise for sale, sell, use, install, or have installed, a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer."** Although not cited by either side, two cases have held that a claim for violation of this section may be brought against the manufacturer of an automobile for providing a faulty

---

[4] KMC contends that sufficient facts must be alleged to support an inference of an intent to defraud. To support that proposition, however, KMC relies on summary judgment cases which require the submission of sufficient proof. Evidence need not be pleaded in a complaint. It is also true that a number of Seventh Circuit cases state that, although Rule 9(b) provides that state of mind may be pleaded generally, "the complaint 'must still afford a basis for believing that plaintiffs could prove scienter.'" Tricontinental. 485 F.3d at 925 (quoting Robin v. Arthur Young & Co., 915 F.2d 1120, 1127 (7th Cir. 1990) (quoting DiLeo, 901 F.2d at 629))). That rule, however, is applicable to securities fraud cases for which scienter is an element, see In re HealthCare Compare Corp. Sec. Litig., 75 F.3d 276, 281 (7th Cir. 1996); Roth v. AON Corp., 2008 WL 656069 *4 (N.D. Ill. March 7, 2008); In re JPMorgan Chase & Co. Sec. Litig., 2007 WL 4531794 *6 (N.D. Ill. Dec. 18, 2007), not an odometer case like the present one.

odometer containing defective software. See Womack v. Nissan N. Am., Inc., 550 F. Supp. 2d 630, 2007 WL 5160791 *5-6 (E.D. Tex. Feb. 16, 2007); Vaughn v. American Honda Motor Co., No. 04-CV-142 at 2-4 (E.D. Tex. March 31, 2005) ("Vaughn I").[5]

The plain language of § 32703(1) applies to a person who installs a device that makes an odometer register mileage other than that actually driven. Nothing in this statute or § 32710 requires that the person be one who directly transfers the automobile to the plaintiff. If all the necessary elements of a violation of this statute are satisfied, a claim may be brought against the manufacturer of the vehicle. Vaughn I, at 4. KMC cites Reiff v. Don Rosen Cadillac-BMW, Inc., 501 F. Supp. 77, 80 (M.D. Fla. 1980), for the proposition that an Odometer Act claim may not be brought against an entity that was not a direct transferor of the vehicle. That case, however, did not involve a violation of what is now codified as § 32703(1). It instead involved a misrepresentation as to the accuracy of the reading on the odometer at the time it was transferred to Reiff from the

---

[5]Vaughn I is not available on Westlaw or Lexis. An electronic version can be found on the ECF docket of the Eastern District of Texas. It is docket entry 18. Also, this decision is referenced in Vaughn v. American Honda Motor Co., 2007 WL 2901666 *1 (E.D. Tex. Sept. 28, 2007), in which the court discusses the fairness of a class settlement of the Odometer Act and other claims in that case.

defendant dealership.[6] The holding is not a general statement that a manufacturer cannot be liable for an Odometer Act violation. Instead it is a holding regarding the particular allegations in that case. There was no allegation that, in relation to the transfer, the manufacturer made any representations to the plaintiff regarding the mileage of the vehicle. See Reiff, 501 F. Supp. at 80. See also Vaughn I, at 3-4 (distinguishing Reiff).

Obviously, § 32703(1) was primarily, if not exclusively, written to deal with persons who tamper with the odometer after manufacture. Womack, 550 F. Supp 2d at ___, 2007 WL 5160791 at *5 (quoting & citing Owens v. Samkle Auto. Inc., 425 F.3d

---

[6] Reiff does not specify which provision of the Odometer Act allegedly was violated. Reiff, 501 F. Supp. at 79, only cites 15 U.S.C. § 1989, which is now codified as 49 U.S.C. § 32710. The claim in Reiff apparently was based on a violation of what now is codified as 49 U.S.C. § 32705(a). In Reiff, it was alleged that the odometer was not connected at the manufacturer and, even though the vehicle had previously been driven, was sold by the dealership as a new vehicle with no mileage. It was held that an Odometer Act claim was adequately stated against the dealership that sold the vehicle to the plaintiff, Reiff, 501 F. Supp. at 79, but not against the manufacturer which made no representations at the time the vehicle was transferred, id. at 80. Section 32703(1) was formerly codified as 15 U.S.C. § 1983 ("No person shall advertise for sale, sell, use, or install or cause to be installed, any device which causes an odometer to register any mileage other than the true mileage driven. For purposes of this section, the true mileage driven is that mileage driven by the vehicle as registered by the odometer within the manufacturer's designed tolerance.").

1318, 1322,[7] 1325 (11th Cir. 2005) (dealer's failure to reveal mileage on title as required by regulation in order to conceal car's ownership by a rental agency)), holds that it is consistent with the purposes of the Odometer Act and broadly construing the statute to effect those purposes, to read § 32703(1) as also requiring that the manufacturer design odometers that are accurate within reasonable tolerances. The Odometer Act contains expressly stated findings and purposes. Two of the stated findings are that "buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle" and "an accurate indication of the mileage assists a buyer in deciding on the safety and reliability of the vehicle." 49 U.S.C. § 32701(a)(2)-(3). Requiring manufacturers to produce accurate odometers would be consistent with those findings. The stated purposes of the Odometer Act, however, are aimed only at protecting the public against odometers that have been tampered with. "The purposes of this chapter are--(1) to prohibit tampering with motor vehicle odometers; and (2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." Id. § 32701(b). Looking to the stated findings, Owens characterizes the purposes of the Odometer Act as being to prevent odometer fraud generally. "Title 49, section 32701 of the United States Code ("Findings and

---

[7] Womack miscites to page 1324 of Owens.

purposes") indicates that the Odometer Act, as its title suggests, is aimed at preventing odometer tampering and odometer fraud."  Owens, 435 F.3d at 1322 (quoted in Womack, 550 F. Supp 2d at ___,2007 WL 5160791 at *5).

In construing the Odometer Act, the Seventh Circuit has limited consideration to the expressly stated purposes of the Odometer Act contained in § 32701(b).  See Ioffe, 414 F.3d at 713 (intent to defraud with respect to car's rebuilt status, but not its mileage, does not violate Odometer Act).  As to the provisions of the Odometer Act at issue in that case, the Seventh Circuit limited claims to those consistent with the plain language of the provisions, which were consistent with related regulations and the stated purposes of the Odometer Act.  In Owens, the Eleventh Circuit expressly rejected Ioffe and instead gave the same provisions a broader construction.  See Owens, 425 F.3d at 1321 n.4.  Unlike the present case and Womack, Owens and Ioffe did not involve construing § 32703(1).  Consistent with Ioffe, however, this court cannot expansively construe provisions of the Odometer Act as Womack did in relying on Owens.  While some legislative history cited in Owens may support a broader purpose of preventing all inaccurate odometer readings, the actual language of § 32703(1) and the expressly stated statutory purposes are limited to preventing tampering with already manufactured odometers.  It is inconsistent with the language of

§ 32703(1) to apply it to odometers that are defectively manufactured that give inaccurate readings. Womack will not be followed.

Vaughn I uses a different route to hold that a violation of § 32703(1) was adequately stated in that case. The complaint in Vaughn I was read as alleging that the software device alleged in that case was something added to the odometer so as to make an already manufactured odometer register inaccurately. See Vaughn I, at 3 ("The plaintiff alleges that Honda altered the Odyssey's odometer with the intent to change the mileage registered by the odometer.") (emphasis added). Thus, consistent with the language of § 32703(1), Vaughn alleged that Honda had intentionally altered the odometer's registering of mileage beyond the manufactured tolerances. That is not the situation in the present case where it is alleged that the odometer was manufactured in a way that allowed a mileage reading deviation of up to 10%. Whether or not such a deviation can be considered as proof of a defective odometer, it does not state a violation of § 32703(1). Count I will be dismissed.

Count II is based on a violation of § 32703(2) which provides: **"A person may not disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer."** KMC raises most of the same arguments that it raised regarding

Count I. Contrary to KMC's contention, a transfer and related misrepresentation need not be alleged. Similar to the § 32703(1) issue of whether the odometer was made to register differently than the manufacturer's designed tolerance, for the § 32703(2) claim it must be decided whether the defendant manufacturers are alleged to have disconnected, reset, or altered the odometer.

In ¶ 60 of the Amended Complaint, plaintiff quotes § 32703(2) in generally alleging that defendants have engaged in "disconnecting, resetting, or altering" the odometer. It is clear from specific allegations of the Amended Complaint, however, that plaintiff is alleging that the odometer was defectively manufactured to register mileage overstatements, not that it was altered after manufacturing. See Am. Compl. ¶¶ 23, 25, 31, 38, 57, 62. The language of § 32703(2)--"disconnecting, resetting, or altering"--necessarily requires a change from the odometer's original condition. Since it is alleged that the odometer was manufactured defectively, there is no alteration that defendants allegedly performed. Count II will be dismissed.

Count III is based on a violation of § 32705(a)(1), which provides:

> **Under regulations prescribed by the Secretary of Transportation that include the way in which information is disclosed and retained under this section, a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure:**

>     (A) Disclosure of the cumulative mileage
> registered on the odometer.
>     (B) Disclosure that the actual mileage is
> unknown, if the transferor knows that the
> odometer reading is different from the number of
> miles the vehicle has actually traveled.

Plaintiff's allegations regarding this claim are general and vague. See Am. Compl. ¶ 28-30. This is likely because plaintiff does not yet know what specific transfers occurred prior to the dealership obtaining the motorcycle for sale to plaintiff. In the Amended Complaint, plaintiff appears to be complaining about an improper disclosure at the time defendants first transferred the motorcycle for delivery to the dealership. The allegations of the Amended Complaint allow for the possibility that there were intermediary transfers between leaving the manufacturers and arriving at the dealership. Regarding the motorcycle that plaintiff ultimately purchased, plaintiff alleges that defendants failed properly to represent the miles the motorcycle had already been driven at the time the motorcycle was transferred to the dealership that sold it to plaintiff, or at the time defendants first transferred it to a prior intermediary who ultimately transferred it to the dealership. Plaintiff does not allege that an affirmative and inaccurate disclosure occurred, but that defendants to failed to make the statement required by § 32705(a)(1)(B) when a transferor knows the odometer is inaccurate. Since defendants allegedly

failed to make an accurate representation to their transferee, plaintiff allegedly received an inaccurate representation from the dealership at the time the dealership transferred title to plaintiff.

Both in Count III of the Amended Complaint and in response to the motion to dismiss, plaintiff expressly relies on § 32705(a)(1). That provision is limited to complying with Department of Transportation regulations regarding required disclosures at the time of a transfer. Those regulations are codified at 49 C.F.R. Part 580. Plaintiff, however, does not allege any violation of the regulations because the regulations contain no requirement that an odometer disclosure accompany the transfer of a new vehicle that occurs prior to the first sale by a dealership. 49 C.F.R. § 580.17(b); Baker v. Cawthon Motor Co., 629 F.2d 410, 412 (5th Cir. 1980). See also 38 Fed. Reg. 2978, 2979 (Jan. 23, 1973) ("Several vehicle manufacturers stated that the proposal would require them to give disclosure statements to their distributors and dealers, and that such a requirement would be both burdensome and pointless. Upon consideration of the nature of manufacturer-dealer transactions, it has been decided to exempt transfers of new vehicles that occur prior to the first sale of the vehicle for purposes other than resale."). Since

defendants had no disclosure obligation under the regulations,[8] Count III does not allege a violation of § 32705(a)(1).

Plaintiff also cites Ryan v. Edwards, 592 F.2d 756, 761 (4th Cir. 1979), for the proposition that "disclosure provisions of the Odometer Act apply not only to odometer mileage statements, but also to general representations regarding the mileage of a vehicle." Pl. Answer Br. at 7.[9] The holding of the Ryan case is not as broad as plaintiff describes it. Ryan holds that oral or written misrepresentations that accompany a literally accurate odometer disclosure statement can be actionable. In that case, the seller had good reason to believe the odometer had turned over. Instead of providing an odometer statement stating the vehicle had been driven 113,175 miles, the odometer statement reported 13,175 was on the odometer and the actual miles were unknown. The Fourth Circuit held that oral representations and a newspaper advertisement that this was a low

---

[8] It has been held that even if there is no obligation to file an odometer disclosure statement, filing an inaccurate one can violate the Odometer Act. See Coleman v. Lazy Days RV Ctr., Inc., 2006 WL 2131303 *3 (M.D. Fla. July 28, 2006). It need not be decided whether that is an accurate statement of the law because, here, it is not alleged that defendants affirmatively provided an inaccurate disclosure statement, only that they omitted to provide the disclosure statement that would have been required by § 32705(a)(1)(B) if applicable to defendants' transfer.

[9] Plaintiff cites to page 760 of the Ryan opinion, but the discussion at pages 7-8 of plaintiff's brief is clearly referring to a holding found on page 761 of the Ryan opinion.

mileage vehicle were actionable even if the odometer statement was literally accurate.  Here, plaintiff does not allege any representations that defendants made to plaintiff either along with the dealership's odometer statement or at any time prior to plaintiff's purchase of the motorcycle.  Moreover, plaintiff ignores that <u>Ryan</u> holds that the advertisement and oral statements violated 15 U.S.C. § 1988(b) which is now codified, in amended form, as 49 U.S.C. § 32705(a)(2).  Section 32705(a)(2) presently provides:  "A person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the disclosure required by such a regulation."  Plaintiff does not allege a violation of this statute because he does not allege a situation for which a regulation requires a disclosure nor even a false statement that was made at the time defendants transferred the motorcycle.

The statutes and case law cited and arguments presented by plaintiff in his Amended Complaint and answer to the motion to dismiss have been considered.  None of them support that plaintiff has alleged a cognizable violation of the Odometer Act, which is the only type of violation on which plaintiff relies.  The Amended Complaint will be dismissed.  Since plaintiff has not moved for class certification, class certification will be denied

and claims of the putative class will be dismissed without prejudice.

IT IS THEREFORE ORDERED that defendant's motion to dismiss [20] is granted. Class certification is denied. The Clerk of the Court is directed to correct the docket to reflect that Kawasaki Heavy Industries, Ltd. is also a defendant in this action. The Clerk of the Court is further directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's individual cause of action with prejudice and dismissing the claims of the putative class without prejudice.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: JULY 17, 2008