IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH BAXTER, | ) | |
| | ) | |
|     Plaintiff, on behalf of himself and | ) | |
|     all others similarly situated, | ) | |
| | ) | JURY DEMANDED |
| | ) | |
| v. | ) | No. 07 C 6745 |
| | ) | |
| KAWASAKI MOTORS CORP., U.S.A., | ) | |
| and KAWASAKI HEAVY INDUSTRIES, LTD. | ) | Judge: William Hart |
| | ) | |
|     Defendants. | ) | Magistrate: Arlander Keys |

**PLAINTIFF'S MOTION TO RECONSIDER THIS COURT'S ORDER DISMISSING PLAINTIFF'S AMENDED COMPLAINT, AND MOTION FOR LEAVE TO FILE PLAINTIFFS' SECOND AMENDED COMPLAINT.**

NOW COMES the Plaintiff, KEITH BAXTER ("Plaintiff"), by and through his attorneys, KROHN & MOSS, LTD., and DESPRES SCHWARTZ & GEOGHEGAN, and moves this Court to reconsider its Order dismissing Plaintiff's Amended Complaint, and for leave to file Plaintiff's Second Amended Complaint. In support thereof, Plaintiff states as follows:

**I. PLAINTIFF DOES NOT ALLEGE THAT THE ODOMETER OF THE SUBJECT VEHICLE WAS MANUFACTURED DEFECTIVELY, BUT RATHER THAT DEFENDANT'S AFFIRMATIVE ACTIONS CONSTITUTE A VIOLATION OF THE ODOMETER ACT.**

This Court begins its Opinion and Order of July 17, 2007, with the question: "Does the Odometer Act apply to what arguably is a manufacturer's design defect?" (See Opinion and Order of July 17, 2008, hereafter "Opinion and Order"). This Court's theme continues: "It is inconsistent with the language of the §32703(1) to apply it to odometers that are defectively manufactured that give inaccurate readings." (Opinion and Order pp.12-13). This Court further states: "Since it is alleged that the odometer was manufactured defectively, there is no alteration that the defendants allegedly performed." (See Opinion and Order p.14). Similarly, this Court notes: "It is clear from

1

specific allegations of the Amended Complaint, however, that plaintiff is alleging that the odometer was defectively manufactured to register mileage overstatements, not that it was altered after manufacturing." (See Opinion and Order p.14).

This Court's reading of Plaintiff's Amended Complaint overlooks Plaintiff's allegations demonstrating that Plaintiff does *not* plead a "manufacturer's design defect," a "defectively manufactured [odometer] that give[s] inaccurate readings," or an "odometer [that] was manufactured defectively." Plaintiff in fact pleads: "Defendants purposefully designed or altered the odometer of Plaintiff's vehicle, or directed the design or alteration of the odometer of Plaintiff's vehicle, to inflate the mileage registered by the odometer, above the actual mileage traveled by Plaintiff's vehicle, by a factor of or approximately ten (10) percent." (See Plaintiff's Amended Complaint at ¶23). Plaintiff further alleges: "Defendants have engaged in, with the intent to defraud, acts which constitute disconnecting, resetting, altering, or having disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer." (See Plaintiff's Amended Complaint at ¶5). Plaintiff additionally pleads: "Defendants have caused, through components, devices, software tables, and electronic mechanisms, the inflation of the reported mileage of the vehicle purchased by Plaintiff, as well as all those included in the subject class, over mileage actually traveled by the vehicle." (See Plaintiff's Amended Complaint at ¶9). Plaintiff moreover included in his Amended Complaint: "Defendants have fashioned a pattern and practice of intentionally altering vehicle odometers so as to consistently exaggerate the mileage in favor of Defendants and to the detriment of consumers." (See Plaintiff's Amended Complaint at ¶9).

Plaintiff, throughout his Amended Complaint, pleads purposeful alteration of the odometer of the subject vehicle, intentional alteration of the odometer of the subject vehicle, and a pattern and practice of altering the odometer of the subject vehicle. The purpose, intention, and pattern and

practice that Plaintiff references relates directly to affirmative actions undertaken by Defendants in altering, or having altered the odometer of the subject vehicle, or in advertising for sale, selling, using, installing, or having installed a device that makes the odometer of a the subject vehicle register a mileage different from the mileage the vehicle was driven. Plaintiff utilizes the word "defect" only to reference the subject odometer in altered condition. Plaintiff does not utilize the word "defect" to describe a design or manufacturing defect.[1]

Plaintiff additionally pleads that Defendants' actions in altering, or having altered the odometer of the subject vehicle, in addition to Defendants' actions in advertising for sale, selling, using, installing, or having installed a device that makes the odometer of the subject vehicle register a mileage different from the mileage the vehicle was driven, were done with the intent to defraud. Significant, this Court declared that Plaintiff pleads intent to defraud properly and sufficiently. (Opinion and Order p.7-8). Therefore, where Plaintiff properly pleads that Defendants' affirmative actions were undertaken with the intent to defraud, it is inconsistent for this Court to suppose that Plaintiff alleges a manufacturing defect in his Complaint. Should Plaintiff have alleged that the subject odometer registers mileage above actual mileage traveled as a result of a manufacturing defect, it would impossible to properly allege intent to defraud where a manufacturing defect inherently manifests only after the subject odometer leaves a defendant's control; thus, the temporal requisites necessitated by properly alleged fraudulent intent would be lacking. Plaintiff does not allege that the odometer of the subject vehicle was manufactured defectively, but rather that Defendants' affirmative actions constitute a violation of the odometer act.

---

[1] *Vaughn v. American Honda Motor Co.*, a case cited by this Court as an example of a properly pleaded claim for violation of the Odometer Act, utilizes the word "defect" in the very same manner. (See Plaintiff's First Amended Class Action Complaint in *Vaughn v. American Honda Motor Co.*, No. 04-CV-142 (E.D. Tex. March 31, 2005), Document 58, p.4, at ¶14, attached hereto as Exhibit "A").

3

## II. PLAINTIFF PROPERLY ALLEGES A VIOLATION OF SECTION 32703(1).

### A. A Plaintiff Need Not Allege A Change From An Odometer's Original Condition In Order To Properly Plead A Cause Of Action Pursuant To Section 32703(1) Of The Odometer Act.

The United States Supreme Court has, from its earliest cases, followed the whole act rule in construing statutes. *See United States v. Fisher*, 6 U.S. (2 Cranch) 358 (1805); *United States v. Priestman*, 4 U.S. (Dall.) 29 (1800) (per curiam). "Statutory interpretation…is a holistic endeavor. A provision that may seem ambiguous is often clarified by the remainder of the statutory scheme – because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United States Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365 (1988). "When interpreting a particular statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute…and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the legislature." *Kokoszka v. Belford*, 417 U.S. 642 (1974).[2]

A legislature passes judgment upon an act as an entity, not giving any one portion of the act any greater authority than another. Any attempt to segregate any portion or exclude any other portion of a legislative act from consideration is almost certain to distort the legislative text. *See* Sutherland, *Statutes and Statutory Construction*, (5th ed., Norman Singer ed.); P. St. J. Langan, *Maxwell on the Interpretation of Statutes* (12th ed. 1969). A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of

---

[2] A critical assumption of the whole act approach is coherence: the interpreter presumes that the legislature drafted the statute as a document that is internally consistent in its use of language and in the way its provisions work together. *See* Friedrich Nietzsche, *On Geneology of Morals* (*and Other Works*) 175 (Walter Kaufman trans. And ed. 1967).

4

obvious mistake or error. *See Indianapolis Power and Light Co. v. I. C. C.*, 687 F. 2d 1098 (7th Cir. 1982); *Estate of Kunze v. C.I.R.*, 233 F. 3d 948 (7th Cir. 2000); *Chickasaw Nation v. U.S.*, 534 U.S. 84 (2001).

Courts do not construe different terms within a statute to embody the same meaning. *U.S. v. Bean*, 537 U.S. 71 (2002). Where a legislature uses certain language in one portion of a statute and different language in another, the court assumes different meanings were intended. *U.S. v. Ahlers*, 305 F.3d 54 (1st Cir. 2002). In like manner, where a legislature has employed a term in one place and excluded it in another, it should not be implied where excluded. *Universal Const. Co., Inc. v. Occupational Safety and Health Review Com'n*, 182 F. 3d 726 (10th Cir. 1999). The use of different terms within similar statutes generally implies that different meanings were intended. *Cunningham v. Scibana*, 259 F. 3d 303 (4th Cir. 2001).

In dismissing Plaintiff's Amended Complaint, this Court states: "Similar to the §32703(1) issue of whether the odometer was made to register differently than the manufacturer's designed tolerance, for the §32703(2) claim it must be decided whether the defendant manufacturer's are alleged to have disconnected, reset, or altered the odometer." (Opinion and Order p.14). This Court continues: "The language of §32703(2) – 'disconnecting, resetting, or altering' – necessarily requires a change from the odometer's original condition." (Opinion and Order p.14). This Court dismisses Plaintiff's claim for violation of Section 32703(1) by reading Plaintiff's Amended Complaint as failing to allege that something was added to the subject odometer so as to make an already manufactured odometer register inaccurately.

Assuming arguendo that Section 32703(2) requires a change from the odometer's original condition,³ Section 32703(1) does not, and this Court's interpretation of Section 32703(1) to

---

³ Discussed infra, a plaintiff need not allege that something is added to an already manufactured odometer in order to properly plead a cause of action pursuant to Section 32703(2), but rather allege only that a defendant caused or directed that an odometer of a motor vehicle is altered intending to change the mileage registered by the odometer.

5

include such a requirement renders it inoperative and superfluous. Sections 32703(1) and (2) of the Odometer Act provide that a person may not:

> (1) advertise for sale, sell, use, install, or have installed, a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer;
>
> (2) disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer.

49 U.S.C. § 32703(1),(2).

Congress chose to direct sections 32703(1) and (2) of the Odometer Act to distinct affirmative actions from which separate causes of actions arise. The plain language utilized by Congress differs amongst sections 32703(1) and (2). Consequently, this Court must interpret the language included in sections 32703(1) and (2) as separate prohibitions, for reason that different language gives rise to different meanings. *See v. U.S. v. Bean*, 537 U.S. 71 (2002); *U.S. v. Ahlers*, 305 F. 3d 54 (1st Cir. 2002) ( a court assumes that by using different language in the same statue different meanings were intended by a legislature).

This Court interprets the "language of §32703(2) – 'disconnecting, resetting, or altering'" to mean that a cause of action for violation of Section 32703(2) arises where a defendant changes an odometer from its original condition. Section 32703(1), which prohibits a person from "advertis[ing] for sale, sell[ing], us[ing], install[ing], or hav[ing] installed a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven," cannot have the same meaning. By dismissing Plaintiff's cause of action pursuant to Section 32703(1) because Plaintiff does not allege that something was added to the subject odometer to so as to make an already manufactured odometer register inaccurately, this Court renders Section 32703(1) inoperative an insignificant.

Based upon the manifest differences in language between sections 32703(1) and (2) of the Odometer Act, the two sections have different meanings. Accounting for the different meanings, Plaintiff pleads that Defendants "engaged in, with the intent to defraud, acts which constitute advertising for the sale, sale, use, installing, or having installed, a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer." (See Plaintiff's Amended Complaint at ¶4). Construing the Odometer Act so that effect is given to all its provisions, Plaintiff sufficiently pleads a violation of Section 32703(1).

>   **B.     Plaintiff Alleges The Same Facts Pleaded By The Plaintiff In *Vaughn v. American Honda Motor Co.*, A Case That This Court Holds Properly Pleaded A Violation Of Section 32703(1) Of The Odometer Act.**

This Court, quoting *Vaughn v. American Honda Motor Co.*, No. 04-CV-142 (E.D. Tex. March 31, 2005), holds that "[i]f all the necessary elements of a violation of this statute are satisfied, a claim may be brought against the manufacturer of the vehicle." (Opinion and Order p.9). This Court found that the plaintiff's allegations in *Vaughn v. American Honda Motor Co.*, were sufficient to state a violation of Section 32703(1) for reason that "[t]he complaint in [*Vaughn v. American Honda Motor Co.*] was read as alleging that the software device alleged in that case was something added to the odometer so as to make an already odometer register inaccurately." (Opinion and Order p.13). This Court further affirmed the appropriateness of the plaintiff's pleadings in *Vaughn v. American Honda Motor Co.*, in pointing out that the plaintiff "alleged that [the defendant] had intentionally altered the odometer's registering of mileage beyond the manufacturer's tolerance." (Opinion and Order p.13).

Significant, the only allegations included in the entirety of the operative complaint in *Vaughn v. American Honda Motor Co.*, referencing "additions" and/or alterations to the subject odometer read:

7

> The vehicle included an odometer unit designed, manufactured and assembled by Nippon Seiki Company, Ltd., New Sabina Industries, Inc., and/or Honda
> \*     \*     \*
> In truth, and without [the plaintiff's] knowledge, [the defendants][4] had purposefully designed the odometer to inflate the mileage driven by a factor of not less than 2.0%. In fact, under certain conditions, the inflation may rise as high as 4%.
> \*     \*     \*
> In particular, Karen Vaughn would show the Court that Defendants' alterations to the odometer and/or the software device accelerate the mileage of each vehicle by a factor of greater than 2.0% causing the odometer of the Honda Odyssey to register a mileage different from the mileage the vehicle was driven. As a result, each member of the proposed class has been demonstrably deprived if the benefit of their bargain.

(See Exhibit "A").

In attempt to distinguish *Vaughn v. American Honda Motor Co.*, from the instant matter this Courts notes: "*Vaughn* uses a different route to hold that a violation of §32703(1) was adequately stated in that case." (Opinion and Order p.13). Specifically quoting from *Vaughn v. American Honda Motor Co.*, in effort to distinguish the plaintiff's pleadings from those of the instant matter, this Courts details: "The plaintiff alleges that Honda <u>altered</u> the Odyssey's odometer with the intent to <u>change</u> the mileage registered by the odometer." (Opinion and Order p.13) (emphasis in original). Plaintiff, indistinguishably pleads: "Defendants have engaged in, with the intent to defraud, acts which constitute disconnecting, resetting, altering, or having disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer." (See Plaintiff's Amended Complaint at ¶5).

Plaintiff further alleges: "Defendants have caused, through components, devices, software tables, and electronic mechanisms, the inflation of the reported mileage of the vehicle purchased by

---

[4] The plaintiff pleaded that all of the named defendants, Honda, Nippon Seiki Company, Ltd., and New Sabina Industries, Inc., had purposefully designed the vehicle's odometer to inflate mileage driven. The plaintiff later pleaded that the subject odometer was designed, manufactured, and marketed by all of the named defendants, Honda, Nippon Seiki Company, Ltd., and New Sabina Industries, Inc.

8

Plaintiff, as well as all those included in the subject class, over mileage actually traveled by the vehicle." (See Plaintiff's Amended Complaint at ¶9). Plaintiff additionally pleads: "Defendants have fashioned a pattern and practice of intentionally altering vehicle odometers so as to consistently exaggerate the mileage in favor of Defendants and to the detriment of consumers." (See Plaintiff's Amended Complaint at ¶9). Plaintiff moreover alleges: "Defendants purposefully designed or altered the odometer of Plaintiff's vehicle, or directed the design or alteration of the odometer of Plaintiff's vehicle, to inflate the mileage registered by the odometer, above the actual mileage traveled by Plaintiff's vehicle, by a factor of or approximately ten (10) percent." (See Plaintiff's Amended Complaint at ¶23). Plaintiff also includes in his Amended Complaint: "Defendants have violated 49 U.S.C. §32703(1) in the following manner: Advertising for sale, selling, using, installing, or having installed, a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer." (See Plaintiff's Amended Complaint at ¶56).

Plaintiff indeed pleads the very same factual circumstances alleged by the plaintiff in *Vaughn v. American Honda Motor Co*. For reason that this Court indicates that the plaintiff in *Vaughn v. American Honda Motor Co*., properly pleaded a violation of §32703(1) of the Odometer Act, Plaintiff, utilizing the same theory of liability, in connection with the same factual circumstances, properly pleads a violation as well.

### III.    PLAINTIFF PROPERLY ALLEGES A VIOLATION OF SECTION 32703(2).

Every word of a statute must be presumed to have been used for a purpose. *Chickasaw Nation v. U.S.*, 534 U.S. 84 (2001). "'Every clause and word of a statute'" should, "'if possible,'" be given "'effect.'" *United States v. Menasche,* 348 U.S. 528, (1955) (quoting *Inhabitants of Montclair Tp. v. Ramsdell,* 107 U.S. 147(1883). Akin, words omitted from a statute may be just as

9

important as words set forth. The enumeration of certain things in a statute suggests that the legislature had no intent of including things not listed or embraced. *See Russello v. United States,* 464 U.S. 16 (1983). "When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." *Raleigh & Galston R. Co. v. Reid*, 13 Wall. 269 (1872).

Section 32703(2) provides that a person may not:

> Disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer.

49 U.S.C. § 32703(2) (emphasis added).

In dismissing Count II of Plaintiff's Complaint, this Court notes: "Similar to the §32703(1) issue of whether the odometer was made to register differently than the manufacturer's designed tolerance, for the section 32703(2) claim it must be decided whether the defendant manufacturers are alleged to have disconnected, reset, or altered the odometer." (Order and Opinion p.14). This Court omits, however, language included in Section 32703(2) reading: "or have disconnected, reset, or altered." 49 U.S.C. § 32703(2). Significant, the plain language of Section 32703(2) not only provides for a cause of action where a defendant's immediate and actual conduct constitutes an act of disconnecting, resetting, or altering an odometer of a motor vehicle intending to change the mileage registered by the odometer, but also where a defendant causes by command, persuasion, or invitation that an odometer of a motor vehicle is disconnected, reset, or altered intending to change the mileage registered by the odometer.[5]

Nothing in the plain language of Section 32703(2) denotes that a cause of action arises only from the situation in which an odometer is "chang[ed] from the odometer's original condition." (Opinion and Order p.14). In dismissing Count II of Plaintiff's Complaint, this Court states: "The

---

[5] "Have" is defined as: "To cause to, by command or invitation;" "To cause to do something, as by persuasion or compulsion." Dictionary.com Unabridged (v 1.1), based on the Random House Unabridged Dictionary, © Random House, Inc. 2006; The American Heritage® Dictionary of the English Language, Fourth Edition Copyright © 2006 by Houghton Mifflin Company.

10

language of §32703(2) – 'disconnecting, resetting, or altering' – necessarily requires a change from the odometer's original condition." (Opinion and Order p.14). The plain language of the Section 32703(2) does not, however, require that an "odometer was altered after manufacturing." (Opinion and Order p.14).

> A. **A Plaintiff Need Not Allege That Something Is Added To An Already Manufactured Odometer In Order To Properly Plead A Cause Of Action Pursuant To Section 32703(2).**

Reading Section 32703(2) its entirety, and giving effect to each and every word utilized by Congress in drafting Section 32703(2), a cause of action arises where a defendant causes by command, persuasion, or invitation the alteration of an odometer of a motor vehicle intending to change the mileage registered by the odometer. Stated otherwise, Section 32703(2) does not "necessarily require[] a change from the odometer's original condition," but rather provides that person may not cause or direct that an odometer of a motor vehicle is altered intending to change the mileage registered by the odometer. (Opinion and Order p.14).

An odometer is an instrument for measuring distance traveled, in this case by a motor vehicle. Odometer. Reference.com. *Columbia Electronic Encyclopedia*. Columbia University Press. http://www.reference.com/browse/columbia/odometer. First described by Vitruvius around 27 BC, the actual invention may have been by Archimedes of Syracuse during the First Punic War. *Id*. Hero of Alexandria describes a similar device in chapter 34 of his *Dioptra*. *Id*. An odometer was also used in the time of Roman Emperor Commodus. *Id*. Of the utmost significance, an odometer, by its very definition, and throughout history, is, and has been, characterized as a device for measuring actual distance traveled. *Id*.

The odometer of Vitruvius was based on chariot wheels of 4 feet (1.2 m) diameter turning 400 times in one Roman mile (about 1400 m). *Id*. For each revolution a pin on the axle engaged a 400 tooth cogwheel thus turning it one complete revolution per mile. *Id*. This engaged another gear

11

with holes along the circumference, where pebbles (*calculus*) were located, that were to drop one by one into a box. *Id*. The distance traveled would thus be given simply by counting the number of pebbles. *Id*. Leonardo da Vinci, in fact, tried to build an odometer according to the description of Vutruvius. *Id*. Later, Ben Franklin invented his own version of the odometer while traveling by carriage. *Id*. Notably, Mr. Franklin's invention was fabricated for reason that he wanted to know how far he had traveled. *Id*.

Mechanical odometers, those manufactured prior to the origination of electronic odometers, generally share a housing with a vehicle's speedometer, and are driven by a cable that the odometer and speedometer share.[6] *Id*. When the vehicle is in motion, the cable moves a series of gears in the odometer, turning a set of numbered drums that count the miles traveled. *Id*. With mechanical odometers, the speedometer can be removed from the vehicle dash board and the digits wound back, or the drive cable can be disconnected and connected to another odometer/speedometer pair while on the road. *Id*.

Electronic odometers, utilizing either an electronic-controlled analog rotary dial, or a digital display, function where a speed sensor emits an electrical pulse whenever a metal or magnetic object passes by the sensor, *i.e.*, the rotation of a motorcycle sprocket, or the rotation of a driveshaft or gears inside the gearbox/transmission of a vehicle. Odometer. Reference.com. *Columbia Electronic Encyclopedia*. Columbia University Press. http://www.reference.com/browse/columbia/odometer; *see also* http://www.blackrobotics.com/yb4_using.pdf; www.yellr.com. Signal pulses are generated for every vehicle wheel rotation. *Id*. Electronic odometers use the speed sensor pulse signal to increment the odometer. *Id*. Electronic speedometers use the speed sensor pulse signal to determine the vehicle speed. In simple terms, the speed sensor provides a pulsing output for each

---

[6] Commonly, pre-1990s vehicles and small capacity motorcycles utilize a bowden cable driven (mechanical) speedometer that is not electronic.

revolution. *Id*. A counter is used to determine each mile logged, while the frequency, or period, is measured to determine speed.[7] *Id*.

An odometer is by definition an instrument that records distance traveled. Therefore, any intention to manufacture, produce, construct or engineer, or direct the manufacture, production, construction or engineering of an odometer that purposefully records distance other than that traveled constitutes the alteration of an instrument designed to record actual distance traveled. Whether Defendants "added to the odometer [something] so as to make an already manufactured odometer register inaccurately" is not dispositive of Plaintiff's claim under Section 32703(2). The plain language of Section 32703(2) provides for a cause of action where a defendant causes by command, persuasion, or invitation that an odometer of a motor vehicle is disconnected, reset, or altered intending to change the mileage registered by the odometer. *See* 49 U.S.C. § 32703(2). There exists no language in §32703(2) of the Odometer Act mandating that in order for a cause of action to arise a defendant must "change from the odometer's original condition" an already manufactured odometer.

The action necessitated by Section 32703(2) is made clear by reading the Odometer Act as a single piece of legislation drafted against the backdrop of cohesive policy of the law. Any ambiguity regarding the requirements of Section 32703(2) are clarified by the remainder of the Odometer Act for reason that the terminology used in Section 32703(1) makes the meaning of section 32703(2) clear where only one permissible interpretation produces a substantive effect that is compatible with Section 32703(1). Section 32703(1) requires that that a plaintiff advertise for the sale, sell, use, install, or have installed a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was drive. 49 U.S.C. § 32703(1). Section 32703(2)

---

[7] Of importance, electronic vehicle systems such as the ECM/ECU (Engine Control Module), PCM (Powertrain Module), ABS (Antilock Braking System), traction control, electronic stabilization system, and cruise control, may also use the speed sensor signal to calculate various performance parameters, and such systems may under-perform if the speed signal is inaccurate. http://www.blackrobotics.com/yb4_using.pdf; www.yellr.com.

does not require action specific to a device, but rather necessitates only that a plaintiff disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer.

For reason that every word of a statute must be presumed to have been used for a purpose, this Court must consider the language of Section 32703(2), reading: "A person may not…have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer." 49 U.S.C. § 32703(2); *See also Chickasaw Nation v. U.S.*, 534 U.S. 84 (2001). Equally important, this Court must not read into Section 32703(2) words omitted. *See United States v. Menasche,* 348 U.S. 528. Specifically, this Court's construction that Section 32703(2) "necessarily requires a change from the odometer's original condition," transforms the plain language of Section 32703(2), and undermines the intent of such plain language where such a "necessity" was neither listed nor embraced.

  **B.**  **Notwithstanding, Plaintiff Alleges That Defendant Added Something To An Already Designed And Manufactured Odometer In Properly Pleading A Cause Of Action Pursuant To Section 32703(2).**

Defendants, through the owner's manual provided to Plaintiff at the time he purchased the subject vehicle, admit that the original operational intent and design of the odometer installed on Plaintiff's vehicle is to accurately record the "total distance…that the vehicle has been driven." (See Plaintiff Amended Complaint at ¶32). Plaintiff explicitly includes in his Amended Complaint: "The Owner's Manual provided to Plaintiff in connection with the purchase of his vehicle reads: 'The odometer shows the total distance in kilometers (miles) that the vehicle has been ridden.'" (See Plaintiff Amended Complaint at ¶32). Operative, the odometer of the subject vehicle, as acknowledged by Defendants, was originally designed, and manufactured, to register actual distance traveled by the subject vehicle.

14

Plaintiff further pleads that Defendants concede: "Kawasaki Motors Corp., U.S.A., along with other manufacturers, distributes product with speedometers that will register higher speed than actual speed." (See Plaintiff Amended Complaint at ¶27). As well, Plaintiff details that Defendants affirmatively recognize "'common inaccuracies'" specific to odometers utilized by Defendants' motor vehicles." (See Plaintiff Amended Complaint at ¶31). Plaintiff additionally alleges that Defendants informed Plaintiff "that a ten percent error rate, specific to discrepant odometer mileage readings, is within Defendant's acceptable tolerance. (See Plaintiff Amended Complaint at ¶27).

Despite the fact the odometer of the subject vehicle, as recognized by Defendants, was originally designed, and manufactured, to register actual distance traveled by Plaintiff's vehicle, Defendants admit common inaccuracies with the odometer of the subject vehicle. Defendants also concede a known error rate specific to the mileage registered by the odometer of Plaintiff's vehicle. In fact, Defendants unambiguously profess distribution of product with instruments known to register higher speed than actual speed. Stated otherwise, construing Plaintiff's allegations against the backdrop that all reasonable inferences must be granted from well pleaded facts, Plaintiff sufficiently pleads that Defendant distributed the odometer of Plaintiff's vehicle altered from its originally designed and manufactured condition. *See Mitchell v. Randolph*, 215 F.3d 753, 756 (7th Cir. Ind. 2000).

**IV.   IN THE ALTERNATIVE, PLAINTIFF REQUESTS THAT THIS COURT GRANT PLAINTIFF LEAVE TO FILE HIS SECOND AMENDED COMPLAINT.**

Plaintiff's Second Amend Complaint is attached in its entirety to Plaintiff's Motion for Leave to file his Second Amended Complaint. Plaintiff's Motion for Leave to file his Second Amended Complaint was filed simultaneously with the instant motion.

WHEREFORE, Plaintiff, KEITH BAXTER, respectfully requests that this Court reconsider its Order dismissing Plaintiff's Complaint, and/or grant Plaintiff leave to file his Second Amended Complaint.

Respectfully submitted,
KEITH BAXTER

By: s/Aaron D. Radbil_____
    Aaron D. Radbil

| | |
|---|---|
| Jorge Sanchez | Aaron D. Radbil |
| Carol Nguyen | Gregory H. Moss |
| Thomas Geoghegan | Scott M. Cohen |
| DESPRES SCHWARTZ & GEOGHEGAN | KROHN & MOSS, LTD. |
| 77 West Washington Street | 120 West Madison Street |
| Suite 711 | 10th Floor |
| Chicago, IL 60602 | Chicago, IL 60602 |
| (312) 372-7391 | (312) 578-9428 |

## CERTIFICATE OF SERVICE

I, Aaron D. Radbil, certify that a true and correct copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following: Paul D. Lawrence, Richard Mueller, Carl Pesce, Thompson Coburn LLP, One US Bank Plaza, St. Louis, MO 63101, and Jeffrey Singer, Segal, McCambridge, Singer & Mahoney, Ltd.. Sears Tower, 233 S. Wacker, Suite 5500, Chicago, Illinois 60606 on July 31, 2008

By: s/Aaron D. Radbil_____
    Aaron D. Radbil