

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEITH BAXTER, on behalf of )
himself and all others )
similarly situated, )
 )
          Plaintiff, )
 )
    v. )    No. 07 C 6745
 )
KAWASAKI MOTORS CORP., U.S.A., )
KAWASAKI HEAVY INDUSTRIES, LTD., )
 )
          Defendants. )

## OPINION AND ORDER

Named plaintiff Keith Baxter alleges that he purchased a new 2006 Kawasaki Vulcan Nomad 1600 motorcycle that has an odometer which overstates the mileage actually ridden on the motorcycle. Named as defendants are Kawasaki Motors Corp. U.S.A. ("KMC") and Kawasaki Heavy Industries, Ltd. ("KHI"), which allegedly designed, manufactured, marketed, and/or distributed the motorcycle. Presently pending is plaintiff's motion for class certification.

Also pending is defendants' motion to strike or, alternatively, to file a surreply. Defendants contend that plaintiffs' reply improperly includes an affidavit of an expert

and arguments that could have been included in plaintiff's opening brief and which improperly raise new arguments in a reply. It is also contended that some of the expert's statements are improper because not based on personal knowledge. Plaintiff contends he is responding to issues raised in defendants' answer and that the contents of the affidavit could not have been included in plaintiff's opening brief due to defendants' delays in responding to class certification discovery. Plaintiff's contention appears to be correct, but that issue need not be formally resolved because defendants' alternative request to file a surreply will be granted. Consideration of the surreply avoids any question of surprise and, to the extent any of plaintiff's contentions are untimely raised, avoids any possible prejudice of defendants not being able to respond to new contentions. Plaintiff's response to defendants' motion to strike/file a surreply is also being considered in ruling on the class certification motion. As to the contention that the expert states facts that are not based on personal knowledge, any improperly supported facts will not be credited.

The burden is on named plaintiff to demonstrate that all the requirements for class certification are satisfied. Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006);

Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993); Dawson v. Allied Interstate, Inc., 2005 WL 1692606 *1 (N.D. Ill. July 13, 2005). To the extent factual disputes exist regarding the prerequisites for class certification, the court must resolve them by appropriate evidentiary submissions, which can be affidavits or other means short of a testimonial hearing. See Szabo v. Bridgeport Mach., Inc., 249 F.3d 672, 675-76 (7th Cir. 2001); Howard v. Securitas Sec. Serv., USA Inc., 2009 WL 140126 *5 (N.D. Ill. Jan. 20, 2009); Lau v. Arrow Fin. Serv., LLC, 2007 WL 1502118 (N.D. Ill. May 22, 2007), report & recommendation adopted, 245 F.R.D. 620 (N.D. Ill. Sept. 28, 2007). Federal Rule of Civil Procedure 23(a) requires that the following four prerequisites be satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Failure to meet any one of these requirements precludes certification of a class. Retired Chicago Police, 7 F.3d at 596; Dawson, 2005 WL 1692606

at *1; Jackson v. National Action Fin. Serv., Inc., 227 F.R.D. 284, 286 (N.D. Ill. 2005).

If the Rule 23(a) elements are satisfied, plaintiff must also satisfy one of the subsections of Rule 23(b). Under Rule 23(b)(2), named plaintiff must establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Under Rule 23(b)(3), named plaintiff must establish both that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

In ruling on class certification, the court has an independent duty to scrutinize the appropriateness of class certification; the court is not limited to arguments made by a party opposing certification. Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003); In re Gen. Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1134 (7th Cir. 1979). See also Szabo, 249 F.3d at 677. Additionally, in determining whether to grant certification, whether a claim will ultimately be successful is not a consideration. Payton v. County of Kane, 308 F.3d 673, 677

(7th Cir. 2002); Rahim v. Sheahan, 2001 WL 1263493 *9-10 (N.D. Ill. Oct. 19, 2001). However, that does not mean that the merits of claims must be completely ignored. The "boundary between a class determination and the merits may not always be easily discernible." Retired Chicago Police, 7 F.3d at 598-99 (quoting Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F.2d 890, 895 (7th Cir. 1981)). In order to resolve questions of typicality or whether common questions predominate, it is sometimes necessary to determine the contours of the applicable law. See Szabo, 249 F.3d at 676-77; Retired Chicago Police, 7 F.3d at 598-99 (quoting General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982)); Jones v. Risk Mgmt. Alternatives, Inc., 2003 WL 21654365 *2 n.2 (N.D. Ill. July 11, 2003); Peoples v. Sebring Capital Corp., 2002 WL 406979 *2 (N.D. Ill. March 15, 2002). Contrary to defendants' contention, named plaintiff need not make a showing that there are some facts supporting the merits of his claim.[1] A class may be certified

---

[1] In their Surreply at 4, defendants cite Szabo, 249 F.3d at 676, and Humphrey v. International Paper, 2003 WL 22111093 *2 (N.D. Ill. Sept. 11, 2003), as holding or supporting that such a requirement exists. No such holding is contained in either case. They support the previously stated proposition that, as to contested factual issues regarding class certification prerequisites, named plaintiff must provide sufficient evidentiary support.

even if it appears the claims are likely to fail on the merits or even if a named plaintiff has not alleged a claim upon which relief can be granted. See Wiesmueller v. Kosobucki, 513 F.3d 784, 786-87 (7th Cir. 2008); Young v. County of Cook, 2007 WL 1238920 *4 (N.D. Ill. April 25, 2007); Yon v. Positive Connections, Inc., 2005 WL 628016 *1 (N.D. Ill. Feb. 2, 2005); Fields v. Maram, 2004 WL 1879997 *7 (N.D. Ill. Aug. 17, 2004).

The Second Amended Complaint contains two pending counts. Count I alleges a violation of 49 U.S.C. § 32703(1), an element of which is that there existed an installed device that makes an odometer inaccurately register mileage. Count II alleges a violation of § 32703(2), an element of which is that the odometer was altered with the intent to cause it to inaccurately register mileage. As to plaintiff's First Amended Complaint, it was held that no cognizable violations of these statutory provisions were stated because plaintiff alleged only that the odometer was designed and/or manufactured in a manner that inaccurately registered mileage. There were no allegations of an installed device or altering of a manufactured odometer. See Order dated July 17, 2008 [Docket Entry 41]. Thereafter, plaintiff was permitted to file his Second Amended Complaint because it contained allegations that, after manufacture, a software device

was added to the odometer or the odometer was otherwise modified. See Order dated August 20, 2008 [Docket Entry 50].

In support of his motion for class certification, plaintiff clarifies what conduct he contends is the installation of an installed device or the alteration of an odometer. The parties agree that plaintiff's model of motorcycle contains an electronic odometer. They also agree that an outside contractor manufactures the odometer for KHI. An electronic odometer measures distance traveled based on the number of electronic pulses received. The odometer must be programmed with the number of pulses that represents a particular distance traveled. For vehicles sold in the United States, the basic unit of distance is one mile, which the odometer also breaks down into tenths of a mile. In order to determine how many pulses is equivalent to one mile, the primary factors to consider are the circumference of the vehicle's tire, the secondary gear ratio, and the number of teeth in the gear.[2] For Vulcan 1600 motorcycle odometers,

---

[2]When being driven, the number of tire revolutions per mile will also be affected by tire wear, tire inflation, and the weight of passengers and items loaded in or on the vehicle, primarily because such factors will affect the circumference of the tire. The parties also agree that speed of travel, weather conditions, and road conditions can affect tire revolutions per mile for actual driving conditions. The odometer in named plaintiff's motorcycle, and apparently no other electronic odometers in defendants' motorcycles, make no adjustments for

plaintiff contends that application of these factors should have resulted in programming the odometer to register one mile for every 44,819 pulses. Plaintiff contends that defendants programmed the odometers to register one mile for every 44,032 pulses, thereby intentionally resulting in a general mileage overstatement of approximately 1.79%. Plaintiff contends that defendants, or at least KHI, provided the outside contractor with the pulse number to program into the odometer. Plaintiff contends that programming the pulse number constitutes installation of a device or alteration of the odometer under, respectively, §§ 32703(1) and (2). Defendants contend that the programming is part of the manufacturing process itself and therefore there can be no possible violation of these provisions.[3] These facts and allegation are only being set out to clarify the contours of plaintiff's claims in order to address issues of class definition, typicality, commonality, and predominance. Whether the programming of the pulse number is an installed device and/or an alteration of the odometer are issues

---

actual driving conditions. Plaintiff's claims are said not to be based on any inaccuracies resulting from such conditions not being taken into account.

[3]Defendants also contend plaintiff's claim and the class claims will fail for other reasons, including that defendants did not intentionally overstate mileage.

that go to the merits of the claims and will not be resolved on the pending motion for class certification.[4] The implication of this issue for commonality and predominance, however, may still be considered.

Presently, named plaintiff's proposed class definition is: "All persons and entities who/which purchased or leased a new Kawasaki motorcycle equipped with an electronic odometer anywhere in the United States since December 28, 2004, Excluded from the Class are defendants, and their parents, predecessors, successors, subsidiaries and affiliates." Pl. Reply [112] at 5. This definition eliminates from a prior proposed definition 39 models that have a non-electronic odometer or no odometer. According to information provided by defendants that runs through December 11, 2008, this definition would include 46 different models of motorcycle for which a total of 230,705 motorcycles were sold. As to the Vulcan Nomad 1600 model owned by named plaintiff, 21,140 units were sold and another 7,209 Vulcan

---

[4]To the extent defendants believe this issue may readily resolve the case on summary judgment, they may bring such a motion at the appropriate time, but not prior to providing plaintiff with all discoverable materials pertinent to this issue. Cf. Fed. R. Civ. P. 56(f).

Classic 1600's were sold which have the same odometer and pulse specification as the Nomad.

Plaintiff does not explain why he proposes December 28, 2004 as a cutoff date for the class definition.[5] The limitation period for an Odometer Act claim is two years from discovery of the claim. See 49 U.S.C. § 32710(b); Byrne v. Autohaus On Edens, Inc., 488 F. Supp. 276, 280 (N.D. Ill. 1980); Emonds v. Newman Chrysler, Inc., 2005 WL 293493 *2 (D. Conn. Feb. 4, 2005); Carrasco v. Fiore Enter., 985 F. Supp. 931, 935-39 (D. Ariz. 1997). Plaintiff's action was filed on November 30, 2007. The purchase date of a motorcycle likely does not correspond with when a putative plaintiff will have discovered a deficiency with the odometer. Many, if not most, potential class members likely still have not discovered their odometers are inaccurate. However, to avoid any individualized issue as to discovery of a claim and a potential limitations defense, members of the class

---

[5]In his motion in support of class certification, plaintiff refers to first complaining to KMC about the odometer on December 28, 2006. (The actual allegation in the Second Amended Complaint ¶ 25 is December 26, 2006). Plaintiff does not expressly reference this date for picking the class period cutoff and there is no apparent reason for measuring the class period cutoff from the date named plaintiff first complained to a defendant since the statute of limitations expires two years after a plaintiff discovers the wrong, not any time period before or after defendant discovers the wrong or first receives an informal complaint.

will be limited to those who purchased their motorcycle November 30, 2005 or later.

There is also good reason to limit any certified class to the particular model purchased by plaintiff and one related model that uses the same odometer and pulse specification. As to each model of motorcycle that has a distinct odometer specification, there would have to be a separate consideration of the accuracy of the pulse programming and whether any programmed inaccuracy was intentional. That would unnecessarily complicate this case and also raise potential issues as to named plaintiff's incentive to represent class members who owned models that used an odometer distinct from the one on named plaintiff's motorcycle. The class for which certification will be considered will be limited to purchasers of Vulcan 1600's. Defendant apparently concedes that the same odometer specification was used for all Vulcan 1600's sold from December 28, 2004 through December 11, 2008. In order to avoid having an open-ended class or possibly including models with other design specifications, the class that will be considered for certification will be defined as follows: All persons and entities who/which purchased or leased a new Kawasaki Vulcan Nomad 1600 or Vulcan Classic 1600 motorcycle, model years 2005 through 2009, anywhere in the United States on or after

November 30, 2005 and no later than December 31, 2008. Excluded from the Class are defendants, and their parents, predecessors, successors, subsidiaries, and affiliates.

From December 28, 2004 through December 11, 2008, approximately 28,000 Vulcan 1600's were sold. While the court has not been provided with the precise number sold between November 30, 2005 and December 31, 2008, presumably it is still nearly 20,000 or more. It would be impracticable to add all members of that group to this action. The numerosity requirement of Fed. R. Civ. P. 23(a)(1) is satisfied.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This is not a demanding requirement and may be satisfied by a single common issue. Hazelwood v. Bruck Law Offices SC, 244 F.R.D. 523, 525 (E.D. Wis. 2007); Abrams v. Van Kampen Funds, Inc., 2002 WL 1989401 *3 (N.D. Ill. Aug. 27, 2002). Here, common questions will include whether the odometer is programmed to overstate mileage, whether the programming constitutes an installed device and/or an alteration of the odometer, and whether any programmed overstatement is intentional. Commonality is satisfied.

Rule 23(a)(3) requires that the claims of the class representative be typical of the claims of the class. The

typicality requirement primarily focuses "on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. 'A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) (quoting Herbert Newberg, Class Actions ¶ 1115(b) at 185 (1977)). Accord Retired Chicago Police, 7 F.3d at 596-97; Rahim, 2001 WL 1263493 at *14. It is only necessary for the claim of the class representative and the claims of the class at large to have the "same essential characteristics;" there may still be differences. Retired Chicago Police, 7 F.3d at 597 (quoting De La Fuente, 713 F.2d at 232); Hardesty v. International Steel Group, Inc., 2005 WL 1712257 *2 (N.D. Ind. July 21, 2005); Rahim, 2001 WL 1263493 at *14. Similar legal theories may control despite factual distinctions. See Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992); Hardesty, 2005 WL 1712257 at *2; Clay v. American Tobacco Co., 188 F.R.D. 483, 491-92 (S.D. Ill. 1999). "The key to typicality is based on the relationship between the class representative and the class members: are the named plaintiff's interests aligned with those of the proposed

class in such a way that the representative, in pursuing his own claims, will also advance the interest of the class?" Rahim, 2001 WL 1263493 at *14. See also In re Bromine Antitrust Litig., 203 F.R.D. 403, 409 (S.D. Ind. 2001).

Defendants contend typicality is not satisfied because plaintiff has not shown that the odometer on his motorcycle has been altered or a device added. Plaintiff's odometer was subjected to the same specifications as all the other members of the putative class.[6] There is nothing to indicate that his odometer was subjected to different manufacturing or installation processes than the odometer of any other potential class member. Named plaintiff's odometer is typical of the putative class. Whether named plaintiff's odometer was altered or a device added is a question that goes to the merits and will be essentially the same for all class members. Defendants make standing-type arguments that named plaintiff has not suffered any injury. Named plaintiff purchased a motorcycle with the type of odometer at issue. While he may fail to prove that the processes applied

---

[6] Defendants also raise issues regarding the different type of odometers on different motorcycles. Since the class definition has been limited to Vulcan 1600 motorcycles, the odometer on every putative class member's motorcycle is the same model and programming.

to his odometer violated the Odometer Act, he has standing to pursue the alleged injury and his odometer has no feature distinguishing it from the odometers of the putative class members.

Defendants also contend that plaintiff is not typical because the actual odometer reading for him, and all other class members, will vary based on particular driving conditions, the weight of passengers, tire wear, and other such variable conditions. Plaintiff's claim, however, is that the pulse number programmed into the odometers, which is the same for each odometer, is too low.[7] Such a determination is the same for everyone. Individual driving habits would only affect how much of an effect any overstatement is likely to have, which could go to individual actual damages. Since the Odometer Act has a provision for statutory damages, see 49 U.S.C. § 32710(a), it is unlikely that individual actual damages will have to be addressed.

Named plaintiff satisfies the typicality requirement of Rule 23(a)(3).

---

[7] As previously indicated, the lower the pulse number, the higher the mileage reading.

Rule 23(a)(4) requires that the named representative adequately represent the interests of the class. Three elements must be satisfied: "(1) the class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the class representative must have a 'sufficient interest in the outcome to ensure vigorous advocacy;' (3) counsel for the class representative must be competent, experienced, qualified and generally able to conduct the proposed litigation vigorously." Lifanda v. Elmhurst Dodge, 2001 WL 755189 *3 (N.D. Ill. July 2, 2001) (quoting Chandler v. Southwest Jeep-Eagle, Inc., 162 F.R.D. 302, 308 (N.D. Ill. 1995)). Accord Dawson, 2005 WL 1692606 at *2; Robles v. Corporate Receivables, Inc., 220 F.R.D. 306, 314 (N.D. Ill. 2004).

Defendants raise no issue regarding the qualifications of class counsel and the court finds that they have the qualifications and ability to represent the class. It is requested that two law firms be appointed class counsel. Instead, however, one attorney from each firm will be appointed as class counsel. Other attorneys at the law firms may, and are expected to, continue to work on the case, but the case should not be overstaffed and, should plaintiffs prevail, any request for attorney fees will be scrutinized and must be reasonable.

As to the qualifications of named plaintiff himself, defendants raise corollary issues to those raised regarding typicality. As previously discussed, named plaintiff satisfies typicality. There is nothing to indicate that he has any interests antagonistic to the putative class He also has a sufficient interest in the outcome of the case.

It is found that named plaintiff satisfies the requirement of Rule 23(a)(4) that he adequately represent the class.

In addition to satisfying Rule 23(a), plaintiff must satisfy the requirements of at least one subsection of Rule 23(b). Plaintiff cites to both Rule 23(b)(2) and 23(b)(3), but primarily relies on Rule 23(b)(3). Since it is found that Rule 23(b)(3) is satisfied, it is unnecessary to also consider Rule 23(b)(2).

In order to certify a class under Rule 23(b)(3), it must be found both that common questions predominate over questions affecting only individual class members and that a class action is the superior method for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); <u>Hudson v. City of Chicago</u>, 242 F.R.D. 496, 503 (N.D. Ill. 2007). "[M]atters pertinent to these findings include: (A) the class members' interests in individually

controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

> While common questions of law or fact must predominate, they need not be exclusive. Scholes v. Moore, 150 F.R.D. 133, 138 (N.D. Ill. 1993). To determine whether common questions predominate, courts look to whether there is a "common nucleus of operative facts." Ziemack v. Centel Corp., 163 F.R.D. 530, 535 (N.D. Ill. 1995) (citing Rosario, 963 F.2d at 1018). A court should direct its inquiry primarily toward the issue of liability, rather than damages, in determining whether common questions predominate. See Beale [v. EdgeMark Fin. Corp.], 164 F.R.D. [649,] 658 [(N.D. Ill. 1995)].

Tatz v. Nanophase Techn. Corp., 2003 WL 21372471 *9 (N.D. Ill. June 13, 2003). See also Armes v. Shanta Enter., Inc., 2009 WL 2020781 *6 (N.D. Ill. July 8, 2009); Fletcher v. ZLB Behring LLC, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006); Bonner v. Team Toyota LLC, 2006 WL 3392942 *4 (N.D. Ind. Nov. 21, 2006). Also, when the case involves standardized conduct towards the members of the class, predominance often is satisfied. See Randolph v. Crown Asset Management, LLC, 254 F.R.D. 513, 519-20 (N.D. Ill. 2008);

Herkert v. MRC Receivables Corp., 254 F.R.D. 344, 352 (N.D. Ill. 2008); Cicilline v. Jewel Food Stores, Inc., 452 F. Supp. 2d 831, 838 (N.D. Ill. 2008). The existence of standardized conduct also favors a finding of superiority, especially when individualized damages are relatively low. Randolph, 254 F.R.D. at 520; Herkert, 254 F.R.D. at 353; Flores v. Diamond Bank, 2008 WL 4861511 *3 (N.D. Ill. Nov. 7, 2008).

Here, the focus will be on defendants' manufacture and programming of the odometers. Common questions of whether the odometer for Vulcan 1600's was programmed to overstate mileage; if so, whether such programming was intentional; each defendant's involvement in the process; and general effects on the mileage readings and values of motorcycles will predominate over individualized questions. Also, since the conduct was standardized and the potential damages of individual class members is relatively low, a class action would be superior. A Rule 23(b)(3) class will be certified.

Notice will need to be sent to the class. Fed. R. Civ. P. 23(c)(2)(B). Defendants shall promptly provide a list of names and addresses of class members and plaintiff shall timely submit a proposed class notice. Plaintiff shall consult with defendants before submitting his proposed notice. Prior to the next status hearing, the parties must also submit a proposed discovery scheduling plan.

IT IS THEREFORE ORDERED that defendants' motion to strike [116] is denied and to file a surreply [116] is granted. Plaintiff's motion for class certification [74] is granted in part and denied in part. A Rule 23(b)(3) class is hereby certified consisting of: All persons and entities who/which purchased or leased a new Kawasaki Vulcan Nomad 1600 or Vulcan Classic 1600 motorcycle, model years 2005 through 2009, anywhere in the United States on or after November 30, 2005 and no later than December 31, 2008. Excluded from the Class are defendants, and their parents, predecessors, successors, subsidiaries, and affiliates. Scott Michael Cohen and William Henry London are appointed class counsel. By October 2, 2009, plaintiff shall submit a proposed notice to the class and the parties shall submit a proposed discovery scheduling plan. A status hearing will be held on October 8, 2009 at 11:00 a.m.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: SEPTEMBER / , 2009