IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEITH BAXTER, on behalf of himself and )
all others similarly situated, )
)
Plaintiffs, )
)
v. ) No. 07 C 6745
)
KAWASAKI MOTORS CORPORATION, )
U.S.A., KAWASAKI HEAVY )
INDUSTRIES, LTD., and DOES 1-3, )
)
Defendants. )

# OPINION AND ORDER

Class action plaintiff Keith Baxter alleges that he purchased a new 2006 Kawasaki Vulcan Nomad 1600 motorcycle (the "Vulcan") that has an odometer which overstates the miles actually ridden. Named as defendants are Kawasaki Motors Corp., U.S.A. ("KMC"), Kawasaki Heavy Industries, Ltd. ("KHI"), and Does 1-3.[1] KHI designed and manufactured the Vulcan. KMC imports and distributes motorcycles produced by KHI.

---

[1] Does 1-3 have never been identified and will be dismissed.

In Counts I and II of the Second Amended Class Action Complaint, plaintiffs allege violations of the federal Odometer Act, 49 U.S.C. §§ 32703(1)-(2). This court has jurisdiction over Odometer Act claims. 28 U.S.C. § 1331; 49 U.S.C. § 32710(b).

Section 32703 provides in part:

A person may not--

> (1) advertise for sale, sell, use, install, or have installed, a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer;
> (2) disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer; . . . .

Count III of the Second Amended Complaint alleges a violation of 49 U.S.C. § 32705(a)(1) of the Odometer Act, which requires written disclosure of the cumulative mileage registered on an odometer at the time of certain transfers of ownership.

It was held that the First Amended Complaint stated no cognizable violations of these statutory provisions because named plaintiff alleged only that

the odometer installed by the manufacturer was defective. There were no allegations of altering an already manufactured or installed odometer, and the transfer of ownership by the manufacturer in a manufacturer-dealer transaction does not require a mileage disclosure statement. *See Baxter v. Kawasaki Motors Corp., U.S.A.*, 2008 WL 8901361 *4-6 (N.D. Ill. July 17, 2008) [Docket Entry 41] ("*Baxter I*").

Thereafter, named plaintiff was permitted to file a Second Amended Complaint because it contained, in Counts I and II, allegations that, after manufacture, a software device was added to the odometer or that the odometer was otherwise altered. *See* Order dated Aug. 20, 2008 [Docket Entry 50]. However, Count III of the Second Amended Complaint alleged the same disclosure-statement violation of § 32705(a)(1) of the Odometer Act as stated in the First Amended Complaint. Count III was dismissed at the same time leave was granted to filed the Second Amended Complaint. *Id. See also Baxter I*, 2008 WL 8901361 at *5-6.

On September 1, 2009, a class was certified consisting of: "All persons and entities who/which purchased or leased a new Kawasaki Vulcan Nomad 1600 or Vulcan Classic 1600 motorcycle, model years 2005 through 2009, anywhere in

the United States on or after November 30, 2005 and no later than December 31, 2008." Excluded from the Class were defendants and their parents, predecessors, successors, subsidiaries, and affiliates. *Baxter v. Kawasaki Motors Corp.*, 259 F.R.D. 336, 344 (N.D. Ill. 2009) [Docket Entry 125]. On January 27, 2010, a motion to delay notice to the Class was denied and named plaintiff was ordered to send notice to the Class. *See Baxter v. Kawasaki Motors Corp.*, 2010 WL 335103 (N.D. Ill. Jan. 27, 2010) [Docket Entry 142].

After extensive discovery, the case is now before the court on defendant KHI's motion for summary judgment.[2] On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant.[3] *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271,

---

[2]Plaintiffs have agreed to voluntarily dismiss KMC and pursue claims only against KHI. However, voluntary dismissal of KMC cannot be accomplished without first providing notice to the Class. Rather than require that expense, dismissal of KMC has awaited resolution of the claims against KHI. To the extent KHI is entitled to summary judgment on all remaining claims, the same reasoning would apply to the claims against KMC and the claims against KMC will be involuntarily dismissed as well.

[3]Defendant moves to strike certain aspects of plaintiffs' factual statements. No factual statement will be stricken. Defendant's contentions, though, have been considered in determining whether there are any genuine factual disputes.

274 n.1 (2009); *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010); *Stokes v. Bd. of Educ. of City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324; *Freundt v. Allied Tube & Conduit Corp.*, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); *O'Brien v. Encotech Constr.*, 2004 WL 609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 594-95 (7th Cir. 2007); *Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *Lampley v. Mitcheff*, 2010 WL 4362826 *6 (N.D. Ind. Oct. 27, 2010). As the Seventh Circuit has summarized:

The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" *Logan*, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." *Id.* (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" *Logan*, 96 F.3d at 978 (quoting

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

*Outlaw*, 259 F.3d at 837.

It is undisputed that the Vulcan was designed and manufactured by KHI and imported and distributed by KMC. Plaintiffs contend the odometers overstate mileage by approximately 1.75%. Approximately one-third of this mileage overstatement results from the mathematical rounding used to convert metric into statute miles. KHI uses a 1.6 conversion rate instead of a 1.60934 conversion rate suggested by plaintiffs, which results in an approximately 0.6% difference in registered miles; that is, if 1.60934 had been used, the overstatement would have instead been 1.15%. Stated otherwise, using the additional decimals would have resulted in a decreased overstatement of approximately 60 miles per every 10,000 miles driven.

The National Institute of Standards and Technology ("NIST"), a division of the U.S. Department of Commerce with statutory responsibility for promoting and maintaining measurement laws, has a publication entitled The International System of Units (SI)--Conversion Factors for General Use, NIST Special Pub. 1038 (2006). It lists a 6-decimal conversion rate for kilometers to

miles, 1.609344. *Id.* § 5.1.3. It is stated that "it is good practice to keep all of the digits, especially if other mathematical operations or conversions will follow. Rounding should be the last step of the conversion process and should be performed only once." *Id.* § 4.4. *See also* NIST Handbook 44 (Specifications, Tolerances, and Other Technical Requirements for Weighing and Measuring Devices) App. A, § 10 (2012) (rounding). Still, in doing rounding, "it is important to establish the purpose of rounding and the application that it will be used in." NIST Special Pub. 1038 § 4.4.1. As noted, though, even if it would have been better practice to have used 5--or even 6--decimal points, the difference between that and using 1.6 is only a 0.6% overstatement, which is 60 miles for every 10,000 actually driven.

The electronic odometer was manufactured for KHI by the firm of Nippon Seiki according to specifications provided by KHI. KHI assembles the as-built odometer without any alteration, modification, or change in the odometer, including software. The specification provided by KHI included a pulse rate of 44,032 pulses per traveled mile. Nominally, a pulse rate of 44,819 would have eliminated any over-registration of mileage.

The odometer operates as follows. The output shaft from the motorcycle's transmission has a 15-tooth gear. As the output shaft turns, it turns the rear wheel. As the rear wheel turns, a speed sensor attached to the output shaft registers an electronic pulse for each passing tooth on the 15-tooth gear. When a specified number of pulses are detected, based on the pulse rate specification (44,032), the information is transmitted into an electronic chip in the odometer. The odometer then indicates that the motorcycle has travel one mile. The number of pulses specified by KHI is programmed by Nippon Seiki into a non-volatile memory chip assembled into circuit hardware and inserted into the odometer.

Another description of the operation of the electronic speedometer/odometer is as follows. A beveled gear with 15 teeth mounted in the final drive assembly turns the drive shaft. The drive shaft turns approximately 3.677 times for each rotation of the tire. As the beveled gear turns, a sensor located near the teeth detects magnetic flux changes as each tooth passes and generates an output pulse corresponding to each tooth. The pulse-train is transmitted via the wiring harness to the speedometer/odometer instrument mounted in front of the driver. The speedometer/odometer instrument electronic circuit conditions the signal and supplies it to a microprocessor. The

microprocessor counts the number of pulses received over a defined time period, as short as 0.01 seconds. This generates a count per unit time. The count is used to calculate speed and distance traveled. The distance value is stored in the non-volatile memory chip.

Odometers do not precisely measure and display the exact distance a vehicle has traveled. Variations in the radius of the tire (and the margin of error or tolerance), gear ratio, air pressure, wear, speed, heat, load, driving conditions, weather conditions, and driver behavior have been recognized as having an effect on mileage registration.

KHI has adopted ±4% as the designed tolerance of the odometer. All of the test data that has been collected by the parties' experts has demonstrated that the odometer displays a mileage distance within ±4%. There are no federal laws or regulations requiring odometers to be designed or manufactured to perform within a certain degree or percentage of accuracy. However, automotive industry standards and guidelines recommend an acceptable range of ±4% for odometer accuracy.

As the court found in *In re Nissan N. Am., Inc. Odometer Litig.*, 2010 WL 3852722 *1 n.2 (M.D. Tenn Sept. 28, 2010), the Society of Automotive

Engineers International ("SAE") has recommended an acceptable range of accuracy which is followed by the industry. SAE Surface Vehicle Recommended Practice J678 (Speedometers and Tachometers-Automotive) § 3.3.3 (Dec. 1988), specifies an accuracy of ±4% of actual distance traveled. SAE Surface Vehicle Information Report J862 (Factors Affecting Accuracy of Mechanically Driven Automotive Speedometers-Odometers) § 4.1.2 (Jan. 1989), specifies an accuracy of ±4% of actual distance traveled. SAE Surface Vehicle Recommended Practice J1226 (Electric Speedometer Specification--On Road) §§ 5.1, 5.2 (Feb. 1983), specifies an accuracy of ±4% of actual distance traveled for speeds greater than five miles per hour.[4]

For a few years, the National Highway Traffic Safety Administration ("NHTSA") had regulations requiring that odometers be tamper-resistant and be accurate within ±4%. Those regulations, however, were promulgated under the National Traffic and Motor Vehicle Safety Act ("Safety Act"), not the Odometer Act, and were completely rescinded in 1982 because they did not have a safety

---

[4] As noted in the 2005 SAE Handbook: "All technical reports, including standards approved and practices recommended, are advisory only. Their use by anyone engaged in industry or trade or their use by governmental agencies is entirely voluntary. There is no agreement to adhere to any SAE Standard or Recommended Practice, and no commitment to conform to or be guided by any technical report."

benefit as is necessary for Safety Act regulations. *See Nissan*, 2010 WL 3852722 at *6. In 1980, motorcycles were excluded from then-exising anti-tampering provisions "in response to comments which pointed out that motorcycles have a relatively short useful life (approximately 7,400-18,600 miles) and that buyers of used motorcycles rely more heavily on inspection of the vehicles than on odometer readings in ascertaining the condition of the vehicles." 45 Fed. Reg. 40585, 40588-89 (June 16, 1980).

NIST has standards for odometers that are used to determine charges on vehicles that are rented or for hire. Such standards do not directly apply to the Vulcan since that was not a vehicle that was rented. Still, it is instructive that NIST recommends that "maintenance and accepted tolerances on odometers shall be 4% of the interval under test." *See* NIST Handbook 44 § 5.53, T.2 (2012).

Both sides' experts measured the accuracy of odometers on a selection of Vulcan motorcycles. No odometer under-registered. All odometers over-registered less than 4% or approximately 1.75%.

Plaintiffs do not directly allege that the odometer was defectively designed. Plaintiffs contend that the electronic odometer is capable of operating within a much lower tolerance: as little as ±0.3, according to plaintiffs' experts.

Plaintiffs contend the Odometer Act was violated by altering or installing a software device (the pulse rate and the memory chip on which the pulse rate was programmed) into the odometer causing it to register more miles than the Vulcan is actually driven. Plaintiffs suggest that the memory chip is a device which was installed to alter the odometer. But there is no evidence that KHI made any change in the odometer supplied by Nippon Seiki. Nor can it be found that the chip was not part of the original unit.

The Odometer Act was adopted to prevent third parties from tampering with odometers. It was intended to apply to post-manufacture tampering with odometers. This court, *Baxter I*, 2008 WL 8901361 at *4-5, and the court in *Nissan*, 2010 WL 3852722 at *5-8, have so held.[5] There is no sufficient basis to argue that the manufacturing process of an odometer is governed by the Odometer Act. Plaintiffs attempt to avoid this problem by arguing that the memory chip recording the pulse rate is an added "device" within the meaning of § 32703(1) of

---

[5] In *Vasilas v. Subaru of Am., Inc.*, 2009 WL 8447590 *4-5 (S.D.N.Y. Aug. 5, 2009), it was held that manufacturing an odometer that produced results outside the intended design tolerance could violate sections 32703(1) and (2). This decision was expressly rejected in *Nissan*, 2010 WL 3852722 at *7, and is inconsistent with this court's earlier holding in *Baxter I*. This court will continue to adhere to *Baxter I*. It is noted, though, that, even following *Vasilas*, plaintiffs' claims would fail since the odometer presently at issue still performs within KHI's ±4% tolerance.

the Act. However, it is clear that the memory chip is an integral part of the odometer and not an added device.

Plaintiffs argue that the "manufacturer's tolerance rate" referred to in § 32703(1) is not relevant because Nippon Seiki is the manufacturer of the odometer and it has no declared tolerance rate for the odometer. The *Nissan* court rejected this same argument. *See* 2010 WL 3852722 at *5 n.6. This argument ignores that the odometer/speedometer is a component that was specified by the manufacturer and connected to a sensory system.

It is undisputed that the accuracy of the Vulcan odometer may be impacted over time due to factors KHI cannot control. Plaintiffs argue, however, based on SAE literature that suggest a ± 0.3 possible accuracy for a new *mechanical* odometer that KHI should have adopted a pulse rate for the Vulcan *electronic* odometer that would nominally produce such accuracy. This is an argument for the adoption of a different standard by the SAE or the NHTSA. But it is not a position that presents a triable issue of fact that could be considered by a jury or by this court based on the Odometer Act.

Section 32710(a) of the Odometer Act provides that a person that violates the Act "with intent to defraud" may be liable under the Act's civil

remedies. Intent to defraud is a necessary element of an Odometer Act claim. *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 806 (7th Cir. 1988); *Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 711-12 (7th Cir. 2005); *Bodine v. Graco, Inc.*, 533 F.3d 1145, 1150-51 (9th Cir. 2008). The design of an odometer within a manufacturer's tolerance range cannot support an inference of fraud. *Compare Diersen v. Chicago Car Exch.*, 110 F. 3d 481, 488 (7th Cir. 1997) (inaccurate disclosure statement by itself is not a basis for inferring intent to defraud). Failure to present facts supporting a genuine factual dispute regarding intent is another basis for granting summary judgment.

Except with respect to emission systems, KHI's motorcycle owner's service warranty system is based on calendar time (24 months from the date of purchase) not on mileage. The emission system component warranty is 18,641 miles (30,000 km). There is no evidence of the repair rate of any emission systems over the life of any Vulcan. No facts suggest that any owner has experienced costs or actual damage because of mileage registration. In other words, there is no evidence that defendant benefits from overstated mileage, which is further support that defendant had no intent to defraud. *Cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007).

Plaintiffs' claims fail on their merits. The entire case as against all defendants will be dismissed with prejudice.

IT IS THEREFORE ORDERED that defendant's motion to strike [248] is denied. Defendant's motion for summary judgment [232] is granted. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiffs dismissing plaintiffs' cause of action with prejudice.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: NOVEMBER 13, 2012